**Clyde E. McKENZIE, Plaintiff in Error,**

v.

**Robert FELDMAN, Defendant in Error.**

**No. 40771.**

Supreme Court of Oklahoma.

Nov. 21, 1967.

A. E. Montgomery, Hudson, Hudson, Wheaton, Kyle, & Brett, Tulsa, for plaintiff in error.

Green & Feldman, W. E. Green, Raymond G. Feldman, Wm. S. Hall, George A. Farrar, Tulsa, for defendant in error.

JACKSON, Chief Justice.

This is an appeal by defendant McKenzie from the trial court's judgment, in the nature of a decree for specific performance in favor of plaintiff Feldman, ordering the defendant to give his written consent to the construction of a building upon premises owned by defendant McKenzie and leased to plaintiff Feldman.

The contract between the parties, executed in 1958, is a lease contract for a minimum of 14 years with an option to purchase. When the option is exercised (after 14 years and the death of McKenzie) the accrued rental payments in effect become purchase money and Feldman is entitled to a deed upon the payment of an additional amount equal to one year's rental.

The above provisions are not brought into question in the appeal now before us. This appeal involves what may be called subsidiary provisions concerning the possible construction of a building upon the premises by plaintiff Feldman. These provisions are as follows:

"* * * should lessee desire to erect a building upon said premises, after the signing of this agreement, plans and specifications therefor shall first be submitted to owner, who *shall* agree and consent to the building being erected thereon in writing, and it is agreed that lessee shall not build or erect any building upon said premises, without the written consent thereto by owner. * * *" (Emphasis supplied.)

Other provisions in the contract which are consistent with or contemplate the construction of a building by lessee are that lessee will not use the premises for any purpose prohibited by any ordinance of the City of Tulsa (thus the building must comply with building codes and zoning ordinances); owner shall have a lien on any building constructed upon the premises to secure payment of installments; and in case of default in monthly payments such building shall become the property of the owner as liquidated damages.

Plaintiff alleged that he had submitted plans and specifications to McKenzie, who "arbitrarily, capriciously, stubbornly, and without cause" refused to give his consent to the erection of any building upon the premises. He asked for specific performance. A copy of the contract was attached to the petition as an exhibit.

Defendant filed a demurrer to the petition upon the general ground that it failed to state a cause of action. After hearing argument, the court overruled the demurrer, and defendant announced his election to stand upon the demurrer, to offer no further pleadings and no evidence, and to appeal from the decision of the court. The

court then entered the judgment from which this appeal is taken.

In this state of the record (no answer was filed, no evidence was presented, and the plans and specifications are not before us) it is clear that defendant has preserved for presentation in this court only the question of whether the petition pleads facts sufficient to constitute a cause of action.

■ As against a demurrer, a petition must be liberally construed, and all of its allegations of fact must be taken as true, together with all reasonable inferences therefrom. If any fact stated therein entitled the plaintiff to any relief, the demurrer should be overruled. Sarkeys v. Simpson, 206 Okl. 425, 244 P.2d 311.

In the briefs in this court, defendant argues generally under four propositions that the contract pleaded may not be specifically enforced because it shows on its face (and thus on the face of the petition) that it is ambiguous, wanting in mutuality of remedy, and concerns construction work to be done in the future.

■ The broad general basis of defendant's entire argument is that, despite the use of the mandatory word "shall" in the language above quoted, defendant, even after the presentation of plans and specifications, has an unconditional right to refuse to give his written consent to the erection of a building.

In support of this argument, he cites other language of the contract under which certain contingencies arise "if owner does consent to lessee's erection * * *" of a building. He argues that the use of the word "if" in the above clause indicates that the defendant has the unqualified right to refuse his consent if he so desires.

We are unable to agree. Such a construction is at best an inference not necessarily supported by the language quoted, which does not say that defendant may, in his sole discretion, refuse to give his written consent; and it is at variance with the express provision that defendant *shall* agree and consent to the erection of the building. We

need not speculate here as to whether the contract implies unfulfilled *conditions* under which the consent of defendant may properly be withheld, because under the rule from Sarkeys v. Simpson, supra, defendant's demurrer to plaintiff's petition, upon which he chose to stand, admits plaintiff's allegation in his petition that defendant's consent is withheld "without cause".

We therefore hold that the contract is not ambiguous.

■ Defendant next points out that under the contract, even if he gives his consent to the erection of a building, plaintiff is not *required* to proceed with the construction, and argues that specific performance as against defendant should be denied because of lack of mutuality of remedy. However, lack of mutuality of remedy is not always a bar to the granting of specific performance. In Epstein v. Gluckin, 233 N.Y. 490, 135 N.E. 861, it is said:

" * * * What equity exacts to-day as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant (citing authorities). Mutuality of remedy is important in so far only as its presence is essential to the attainment of that end. The formula had its origin in an attempt to fit the equitable remedy to the needs of equal justice. We may not [permit] it to petrify at the cost of its animating principle."

To the same general effect, see 81 C.J.S. Specific Performance § 11 a, at page 428.

■ Under the contract pleaded, after the written consent is given, there is no change in the obligations of the parties until the building is *completed*. At that time the rental decreases $100.00 per month but the taxes on the premises become the obligation of lessee instead of owner. Also, the total consideration to be paid by plaintiff when he exercises his option to purchase appears to be the same whether he erects a new building on the premises or not, although we do not so decide in this case. In view of these provisions, no "injustice or oppression" will result if, after

a decree for specific performance, plaintiff fails to erect the building. Lack of mutuality of remedy is therefore no bar to a decree for specific performance in this case.

In his last proposition, defendant seeks the benefit of the general rule that contracts for building or construction work will not be specifically enforced. See 22 A.L.R.2d 543; 81 C.J.S. Specific Performance § 74 a. We agree with plaintiff that this is but an extension of the argument concerning mutuality of remedy. In other words, defendant argues that he was justified in refusing to give his consent because if he did, he could not thereafter have a decree for specific performance as against the plaintiff to construct the building since equity will not specifically enforce building or construction contracts, and specific performance as against defendant should therefore be denied because of lack ·of mutuality of remedy. As we have noted above, lack of mutuality of remedy is not a bar to a decree for specific performance in this case.

The judgment of the trial court is affirmed.

All the Justices concur.