**Dolard GENDRON et ux.**

v.

**PAWTUCKET MUTUAL INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Dec. 31, 1979.

Rocheleau & Fournier, Ronald P. Lebel (orally), Paul Fournier, Lewiston, for plaintiffs.

Berman, Berman & Simmons, P. A., Paul F. Marci (orally), Gary Goldberg, Lewiston, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD and NICHOLS, JJ.

NICHOLS, Justice.

It is rare for an appellate court to encounter a case challenging an order entered upon a motion *in limine,* first, because such a motion is addressed to the discretion of the trial court, and, second, because the order thereon is interlocutory in nature.

This case, however, which comes up on report pursuant to M.R.Civ.P. 72(c), presents such a challenge.

On December 8, 1971, a fire destroyed a service station on Lisbon Street, in Lewiston, Maine, which was owned in fee by the Plaintiffs. That property was covered by a fire insurance policy issued by the Defendant, which policy required the Defendant to indemnify the Plaintiffs "to the extent of the actual cash value of the property at the time of the loss . . . ." At the time of the fire, the property was also the subject of a written agreement between the Plaintiffs and Shell Oil Company, which agreement provided that the service station was to be demolished, and a new service station constructed by Shell Oil Company.

The claim arising out of that fire loss which the Plaintiffs assert against the Defendant insurer is the subject of this action. It was before us on appeal a year ago, when we held that at the time of the loss the Plaintiffs did indeed have an insurable interest in the structure destroyed by that fire. *Gendron v. Pawtucket Mut. Ins. Co.,*

Me., 384 A.2d 694, 697–98 (1978). We then expressly reserved judgment on the evidentiary issue now raised before us, *id.* at 698, n. 2, and remanded the case to Superior Court (Androscoggin County) for further proceedings.

There the Plaintiffs moved *in limine* to determine the admissibility on the issue of damages of evidence of their agreement with Shell Oil Company under which the latter would demolish the existing structure and replace it with a new service station. They urged that a ruling *in limine* "would narrow the issues, allow the parties to better prepare for trial, and could prompt settlement of the litigation."

After a hearing on the motion *in limine* the Superior Court on October 30, 1978, entered its order that:

> [N]o party, attorney or witness mention or refer to, directly or indirectly, within the hearing of the jury, anything concerning Article 4–A of Lease Attachment (Shell Oil Company's contractual obligation to demolish); and that within the hearing of the jury they make no reference to the fact that this motion has been served, filed and granted.

Thereupon the Defendant insurer brings the case here on report, asserting (I) that it was improper for the trial court to rule *in limine* on such an evidentiary issue and (II) that the order itself was erroneous because the proffered evidence was relevant to the actual cash value of the structure at the time it was destroyed by fire.

On the second issue only we sustain the position of the Defendant insurer.

I

We consider at the outset the question of whether a motion *in limine* was an appropriate method for resolution by the Superior Court of this evidentiary issue.

■ A motion *in limine* [1] seeks a protective order prohibiting the opposing party,

1. The Latin phrase may be translated "on the threshold" or "at the outset". Broadly defined, it would apply to any motion made prior to the impaneling of the jury. We use the term in this

counsel and witnesses from offering offending evidence at trial, or even mentioning it at trial, without first having its admissibility determined outside the presence of the jury.

■ This motion recognizes that the mere asking of an improper question in the hearing of the jury may prove so prejudicial that, notwithstanding an instruction by the court to disregard the offensive matter, the moving party will be denied his right to a fair trial. It is the prejudicial effect of the questions asked or statement made in connection with the offer of evidence, and not so much the prejudicial effect of the evidence itself, that this very practical tool was designed to reach.[2]

■ A motion *in limine*[3] is appropriate in civil and criminal cases alike. It is particularly addressed to the exclusionary rules. Indeed, the legitimacy of the motion at first was grounded in the inherent discretion of the trial judge to rule on questions of evidence. Today ample authority is found in the Maine Rules of Evidence, notably Rules 102, 103, 104, 402 and 403.[4]

■ While this motion resembles the more familiar motion to suppress, there is an important distinction: the motion to suppress is grounded in constitutional right. The motion *in limine* is addressed to the discretion of the trial judge.

■ If the trial judge is persuaded that a ruling should be made before the jury is impaneled, his order may take either of two forms: (a) His order may be an "absolute prohibitive" one, directing the opposing party to neither offer the challenged evidence or even to mention it in the presence of the jury; (b) His order may be a "preliminary prohibitive" one, directing the opposing party to neither offer the challenged evidence or even to mention it in the presence of the jury unless and until during trial out of the hearing of the jury he obtains a ruling on the admissibility of the challenged evidence. By that point in the trial it is anticipated the trial judge will have sufficient legal and factual information before him to make a final ruling.

The motion *in limine* was not recognized at common law. Indeed, our legal tradition did not countenance the determination of evidentiary matters prior to the trial itself. At first this new procedural device encountered opposition in the courts.[5] During the last thirty years, however, this motion has become widely recognized as a salutary device to avoid the impact of unfairly prejudicial evidence upon the jury and to save a significant amount of time at the trial.

Scholarly comment has consistently supported even wider use of the motion *in limine*.[6]

opinion as it has come to be popularly described in practice and as it is defined herein.

2. *Burrus v. Silhavy,* 155 Ind.App. 558, 293 N.E.2d 794, 796 (1973); *Bridges v. City of Richardson,* 163 Tex. 292, 293, 354 S.W.2d 366 (1962).

3. In various jurisdictions this procedural device has become known as a motion *ad limine,* a motion to exclude, a motion to suppress, a motion to limit evidence and a robing room motion. Sometimes the procedure has no label.

While this motion may be made at any time before the challenged evidence is offered or alluded to before the jury (even during the trial if there should be unexpected developments), as a practical matter the motion should be served and filed as early as possible in the proceedings.

4. The Maine Rules of Evidence cited track their federal counterparts.

5. *See,* illustratively, *Bradford v. Birmingham Electric Co.,* 227 Ala. 285, 149 So.2d 729 (1933); *Carrithers v. Jean's Executor,* 259 Ky. 20, 22–23, 81 S.W. 857 (1935).

6. *See* Traster, "Protecting Your Client with the Motion in Limine," 22 *Trial Lawyer's Guide* 147 (1978); Comment, "The Use of *Motions in Limine* in Civil Litigation," 1977 *Arizona State Bar J.* 443 (1977); Mahoney & Jacobson, "The *Motion in Limine:* A Remedy for Dirty Tricks," 27 *Federation Ins. Counsel Q.* 65 (1976); Comment, "The Motion *in Limine:* Pretrial Trump Card in Civil Litigation," 27 *U.Fla.L.Rev.,* 531 (1975); Comment, *"Motion in Limine,"* 29 *Ark. L.Rev.* 215 (1975); Comment, "The *Motion in Limine*—A Useful Procedural Device," 35 *Mont.L.Rev.* 362 (1974); Davis, "The Motion in Limine—A Neglected Trial Technique," 5 *Washburn L.J.* 232 (1966); *Annot.,* 63 A.L.R.3d 311 (1975); *Annot.,* 94 A.L.R.2d 1087 (1964); 20 *Am.Jur. Trials* 441 (1973).

In the earlier years the motion *in limine* was employed to prevent an adversary from mentioning the existence of evidence so highly prejudicial to the moving party that a motion to strike or an instruction by the trial judge to disregard the offending matter could not undo the harm that had been done.[7] Litigators soon discovered that whenever an advance ruling on admissibility could be obtained, it not only spared them the expense of bringing to the courthouse witnesses and rebuttal witnesses, but it also afforded them a basis for decisions of trial strategy.[8] *See, e. g., United States v. Palumbo,* 401 F.2d 270 (2d Cir. 1968).

Moreover, under modern rules the motion *in limine* may be of even greater utility as a tool for narrowing the issues and thereby for enhancing the parties' preparation for trial.

M.R.Evid. 103(c) provides:

In Jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

Determination of evidentiary questions in advance of trial heeds the admonition of this rule.

Furthermore, the broad authority conferred upon the Superior Court by M.R. Civ.P. 16(c)(2) to consider at pre-trial conference "[s]uch other matters as may aid in the disposition of the action" reminds litigants of the economy which they may achieve through a motion *in limine* at that stage.[9] The motion should be used selectively; but, so employed, the motion may not only result in the exclusion of evidence of such a character that its unfairly prejudicial nature can be demonstrated positively in advance of trial, but, going beyond the historic pattern, the motion *in limine* may be utilized in other ways to narrow the issues, shorten the trial and save costs for the litigants.[10] The fact-finding process

---

7. *See State v. Dodge,* Me., 397 A.2d 588, 592–93 (1979); *State v. Roy,* Me., 385 A.2d 795, 798 n. 2 (1978); *State v. Barlow,* Me., 320 A.2d 895, 903 (1974); *State v. Perkins,* Me., 275 A.2d 586, 588 (1971).

8. Perhaps once an evidentiary issue is decided so far as the trial court is concerned, it enhances the prospects for compromise settlement. Perhaps also when the moving party does not succeed in gaining in advance of trial the order which he seeks, he may have educated the trial judge on the evidentiary problem and thereby enhanced his prospects of a favorable ruling at trial.

9. *See Aley v. Great Atlantic & Pacific Tea Co.,* 211 F.Supp. 500, 503 (W.D.Mo.1962).

10. We encourage the use of motions *in limine* in our trial courts whenever appropriate, yet we should note certain limitations inherent in this practice. First, the ruling on such a motion is interlocutory and, therefore, not immediately appealable.

Under M.R.Civ.P. 72(a) the Superior Court may by agreement of the parties report an action to this Court only when a decision of the question of law brought up would in at least one alternative finally dispose of the action. It would be a rare case indeed where the decision on a motion *in limine* would be dispositive so that the motion could be reported here prior to a ruling thereon.

Under M.R.Civ.P. 72(c) the Superior Court may, on motion of the aggrieved party and in the discretion of the justice who has made an interlocutory order, report the case to this Court where the Superior Court is of the opinion that the question of law involved in that interlocutory order ought to be determined by this Court before any further proceedings are taken therein. This is a departure from our "final judgment" rule, and the device should be used only on extraordinary occasions. This device does not relieve the Superior Court of its responsibility to decide numerous difficult questions properly directed to its judgment and discretion. *Laverdiere v. Marden,* Me., 333 A.2d 701, 702 (1975). Excessive use of the device would transform our Court into "an advisory board for the direction of the business of the court at nisi prius, a function the Law Court cannot assume." *Fidelity & Casualty Co. v. Bodwell Granite Co.,* 102 Me. 148, 152, 66 A. 314, 316 (1906). In each instance a case is reported here, it is for *this* Court to determine whether the question of law involved is sufficiently important or doubtful to warrant a departure from the "final judgment" rule. *State v. Placzek,* Me., 380 A.2d 1010, 1012–14 (1977). Whenever we find a report to be improvident, we shall discharge it.

A second limitation on this practice is that the trial judge will be alert to the possibility that in certain cases a ruling on the admissibility of the challenged evidence may not be appropriate *in limine* because his ruling may re-

may itself be improved through better preparation by counsel and earlier consideration of the crucial issues by the trial judge.[11]

In sum, the motion *in limine* can be a valuable tool for protecting a party's right to a fair trial.

■ Turning to the case before us, where the challenged evidence was documentary in nature, it was entirely appropriate for the Superior Court to entertain a motion *in limine* that sought a ruling in advance of trial on the admissibility of that evidence.

## II

■ The second issue raised before us is whether the Superior Court erred in excluding evidence of the agreement for demolition of the service station, which evidence, the Defendant company argues, is highly relevant to the issue of damages.

At the threshold, M.R.Evid. 401 defines "relevant evidence" (as does its counterpart in the federal rules) as:

. . . evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Moving from that general statement to the specific question now before us, we note that the issue is a novel one in this jurisdiction.

Here the Plaintiffs had leased their premises to Shell Oil Company for fifteen years with options to extend the lease for 3 five-year periods. The Oil Company in turn had leased the station back to the Plaintiff, Dolard Gendron, for three years, retaining a right to terminate upon thirty days' notice after the first year. Article 4 A of an attachment to the initial lease by the plaintiffs provided:

As part of the consideration of this lease, Shell promises and agrees, that within one year from the date hereof, it will raze and remove the existing three-bay service station on the premises and construct a new three-bay ranch style service station on the premises. Shell may raze or remove any building or other structure which it has constructed on the premises only if it replaces it with a comparable building or structure.

Thus the Oil Company (a) was granted the *right* to raze any building on the premises on the condition that it replace it with a comparable building and (b) incurred the *obligation* to raze the existing service station and erect in its place a new service station. By other provision of the documents the Oil Company was obligated to erect the new structure by March 26, 1972, and the Plaintiffs retained salvage rights to the old service station. *Gendron v. Pawtucket Mut. Ins. Co., supra,* at 697–98. Thus the Plaintiffs' property interest was subject to the Oil Company's right to demolish the existing service station, and this right was a specifically enforceable one. *See Royal Ins Co. v. Sisters of the Presentation,* 430 F.2d 759, 761 (9th Cir. 1970); *McKenzie v. Feldman,* 434 P.2d 884 (Okl. 1967).

These features of the agreement would certainly affect the fair market value of the Plaintiffs' property interest, because it would influence the amount a willing buyer would give, and a willing seller would accept, in a sale on a free and open market.

quire an evaluation of the evidence actually adduced at trial. *State v. Dodge,* Me., 397 A.2d 588, 592 (1979).

11. Illustratively, this motion may be used in civil cases to seek a ruling on the competency of certain evidence; to determine the elements of damages in a given case; to gain a ruling excluding evidence which is irrelevant under M.R.Evid. 401; to determine the admissibility of evidence of subsequent remedial measures under our unique M.R.Evid. 407(a); to ascertain whether evidence of statements made

during compromise negotiations may be admitted pursuant to M.R.Evid. 408; or to test the admissibility of statements against interest under M.R.Evid. 804(b)(3). Likewise, in criminal cases, the matters amenable to this motion include the determination in advance of trial of the admissibility of evidence of character or conduct under M.R.Evid. 404; of prior convictions under M.R.Evid. 609; of statements under belief of impending death under M.R.Evid. 804(b)(2); and in some instances of the opinions of investigating officers.

*Forer v. Quincy Mut. Fire. Ins. Co.,* Me., 295 A.2d 247, 249 (1972).

We conclude, therefore, that the existence of this agreement is relevant to valuing the Plaintiffs' interest. It was not speculative. It was a present and existing limitation on their property interest at the time of the fire loss. In sum, it is relevant evidence that should be admitted.

■ Admission of this evidence is intended to assure application by the jury of the principle of indemnity, i. e., to make the measure of recovery for fire insurance losses correspond to the actual pecuniary loss sustained by the insured. *Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.,* 77 N.J. 1, 389 A.2d 439, 444 (1978). "Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss." *McAnarney v. Newark Fire Ins. Co.,* 247 N.Y. 176, 159 N.E. 902, 905 (1928). The wider the range of evidence made available to the fact-finder, the more reasonable it is for a court to accept the fact-finder's conclusion as to value. *Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc., supra* 389 A.2d at 445; Hinkel, "The Meaning of 'Actual Cash Value,'" 1967 *Ins.L.J.* 711, 715; *see generally* 15 R. Anderson, *Couch on Insurance 2d* § 54:134:138 (1966); *Annot.,* 61 A.L.R.2d 711 (1958).

In the case before us the probative value of the multifaceted transaction with the Oil Company substantially outweighs any risk that the fact-finder may be confused by the details of that transaction.

The entry is:

Interlocutory order dated October 30, 1978, vacated.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

DELAHANTY and GODFREY, JJ., did not sit.