Louise L. RIOUX, individually and as representative of the Estate of Paul A. Rioux, and as next friend of Christina L. Rioux, Becky L. Rioux, and Amy S. Rioux, Plaintiff,

v.

DANIEL INTERNATIONAL CORPORATION, Defendant and Third-Party Plaintiff,

v.

COMMERCIAL CONCRETE CORPORATION, Third-Party Defendant.

Civ. No. 80–0010 P.

United States District Court,
D. Maine.

March 12, 1984.

wherein its overall financial status may be evaluated. *Sitchenko v. DiResta,* 512 F.Supp. 758 (E.D.N.Y.1981).

John N. Kelly, Portland, Me., Leo J. Delicata, Biddeford, Me., for plaintiff.

William W. Willard, Robert F. Hanson, Portland, Me., for defendant and third-party defendant.

## MEMORANDUM OF DECISION ON MOTION OF DEFENDANT, DANIEL INTERNATIONAL, INC., TO BAR ADMISSIBILITY OF EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES

GENE CARTER, District Judge.

The Defendant, Daniel International Corporation, filed on January 12, 1984, a motion *in limine* seeking a pretrial ruling pursuant to Fed.R.Evid. 407 as to the admissibility in the course of Plaintiff's case in chief, or in rebuttal, of evidence relevant to showing any change of method used by the Defendant, Daniel International Corporation, to secure vertical concrete pipe risers after the occurrence of the accident in question in this case. The parties have filed written memoranda of law on the issues raised by this aspect of its motion *in limine* and have presented oral argument thereon to the Court at the final pretrial conference held on March 5, 1984. Pursuant to ¶ 6(e) of the Court's Report of Final Pretrial Conference and Order, filed on March 8, 1984, the Court issues this Memorandum of Decision on the issues raised by the motion. Both Plaintiff and the Third-Party Defendant, Commercial Concrete Corporation, object to the granting of Daniel's motion *in limine* on this evidentiary point.

Daniel has moved "[t]hat pursuant to F.R.Evid. 407 Plaintiff and/or Third-Party Defendant be prohibited from offering evidence related to any methods used by the Defendant to secure vertical pipe risers after the death of Paul Rioux." The Plaintiff and Third-Party Defendant oppose this motion on the basis of two principal contentions: (1) that questions concerning the ad-

missibility of such evidence should be governed by the provisions of the Maine Rule of Evidence (Me.R.Evid. 407) and not by the provisions of the Federal Rule, and (2) that even if the Maine Rule does not apply, the evidence in question will be relevant to issues as to which it is properly admissible under the provisions of the second sentence of the Federal Rule.

The factual context of these contentions is that this is a wrongful death action arising out of the death of Paul A. Rioux on a construction site in Rumford, Maine on September 10, 1979. The decedent was an employee of Commercial Concrete Corporation. Defendant Daniel was the general contractor on the project. The decedent was killed when he was struck on the head by a falling section of concrete-filled steel pipe. The pipe was part of a vertical concrete piping system being used to pour concrete on the upper levels of a structure which Daniel was erecting. The Plaintiff contends that Daniel had the duty and responsibility of properly erecting and maintaining the vertical piping and that the piping fell because it was inadequately supported. It is represented that prior to the occurrence of this accident, Daniel supported the vertical concrete pipe risers with the use of rope attachments to the structure of the building. After the accident, it is asserted, Daniel changed its method of securing these vertical risers by performing this function with welded U-bolts. The Plaintiff intends to introduce into evidence these subsequent "remedial" changes in the method of placing and securing the vertical risers. Plaintiff contends that such evidence is relevant to show negligence or other culpable conduct on the part of Daniel in connection with the collapse of the riser here causing the injury.

In deciding the issues raised here, the Court must conduct two inquiries. First, it must determine whether the Maine or the Federal Rule of Evidence applies in this case. If the Maine Rule applies, it is clear that the evidence is admissible for the broader purpose asserted by Plaintiff and Commercial. Should the Court, however, determine, that the Maine Rule does not apply, then it must consider whether or not the evidence is admissible under the second sentence of Fed.R.Evid. 407, which permits the utilization of evidence of subsequent measures where it is relevant to genuine factual issues other than those of the negligence or culpable conduct of a party in connection with the establishment of liability for an event. These inquiries will be addressed in the order just stated.

A.

This action was initiated in this Court by a Complaint filed herein on January 21, 1980. The jurisdiction of this Court is based upon diversity of citizenship between the Plaintiff and the Defendants. The Plaintiff and Commercial argue that Rule 407 of the Maine Rules of Evidence applies to all counts of the Complaint in this diversity-based action.[1] That rule allows subsequent remedial measures to be admitted into evidence for the purpose of proving negligence or culpability. Rule 407 of the Federal Rules of Evidence specifically precludes admission of evidence of subsequent remedial measures for the purpose of proving negligence or culpability;[2] it does al-

---

1. "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of subsequent measures is admissible." Rule 407(a), Me.R.Evid.

2. The rule incorporates conventional doctrine which excludes evidence of subsequent remedial measures as proof of an admission of fault. The rule rests on two grounds. (1) The conduct is not in fact an admission, since the conduct is equally consistent with injury by mere accident or through contributory negligence .... Under a liberal theory of relevancy this ground alone would not support exclusion as the inference is still a possible one. (2) The other, and more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety. The courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees, and the language of the present rules is broad enough to encompass all of them. Rule 407, Fed.R.Evid., Notes of Advisory Com-

low, however, the evidence to be presented for other purposes such as proving feasibility or control.[3] The Maine Rule 407 allows evidence of subsequent remedial measures to be admitted for purposes of showing negligence, or other liability creating culpable conduct, on the basis of a deliberate policy decision.[4] Plaintiff and Commercial argue that the Maine Rule 407 must be applied because this is a diversity action in which state substantive law applies, and that state law for such purpose includes the provisions of Maine Rule 407 with its distinctly substantive, policy-based, connotations.

It must be noted that cases arising prior to the enactment of the Federal Rules of Evidence are inapposite to this issue because, prior to the enactment of the Federal Rules of Evidence, Fed.R.Civ.P. 43(a) mandated that state rules of evidence generally be applied in federal court.[5] Since the adoption of the Federal Rules of Evidence, distinguished commentators have taken the position that even in diversity cases the federal law of evidence applies in actions tried in federal court. Thus, Professors Wright, Miller and Cooper state:

> Of all the procedural and quasi procedural rules that are applied in the federal

---

mittee on Proposed Rules (1982) (citations omitted.)

3. "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Fed.R.Evid. 407.

4. Subdivision (a) of this rule makes admissible evidence of measures taken after an event which, if taken previously, would have made the event less likely to occur. This is contrary to Maine law before the rules and to the nearly universal law elsewhere, as well as to the Federal Rule. Exclusion because such evidence is irrelevant to the issue of negligence, a reason sometimes urged, is not tenable under the broad definition of relevancy in Rule 401. The more generally accepted rationale is that exclusion is justified because admissibility would deter the sound public policy of encouraging repairs. That policy is largely defeated, however, by admission of the evidence for some other purpose, such as to show it was the defendant's duty to make repairs, the feasibility of making repairs, that the defendant knew of the dangerous condition or for some other reason. A limiting instruction to consider it for a limited purpose only is unlikely to be effective. The assumption that a defendant will not take corrective action because he knows it might be used against him is not persuasive. A defendant as knowledgeable and as cold-blooded as the exclusionary rule suggests would probably be aware of the many exceptions, which would make it risky to refrain from making needed repairs. Enlightened self-interest would often lead defendants to make repairs despite the possibility of evidence of such action being received on the issue

of fault. This would surely seem true of a structural change by a national manufacturer. In any event, if the evidence is admitted, it remains for the jury to decide whether a standard of reasonable care has been satisfied. A decision to make something already reasonably safe even safer should not be penalized. R. Field & P. Murray, *Maine Evidence*, § 407.1 at 78 (1976). (Citations omitted.)

5. In pertinent part, the former Rule 43(a) provided as follows:

> All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held.

See C. Wright & A. Miller, 9 *Federal Practice and Procedure* at 306 (1971). When Congress enacted the Federal Rules of Evidence, Rule 43(a) was amended and its prior operative provisions were replaced by Fed.R.Evid. 101 and 1101. Rule 101 provides:

> These rules govern proceedings in the courts of the United States and before the United States magistrates, to the extent and with the exceptions stated in rule 1101.

In turn, Rule 1101(b) provides:

> These rules apply generally to civil actions and proceedings, including admiralty and maritime cases, to criminal cases and proceedings, to contempt proceedings except those in which the court may act summarily, and to proceedings and cases under title 11, United States Code.

Thus, the prior general rule that state law would govern most evidentiary matters in federal court was dramatically reversed by the enactment of the Federal Rules of Evidence which now dictate that the specific federal rules govern virtually all evidentiary matters in federal court.

courts, the Federal Rules of Evidence are *least* affected by the *Erie* doctrine. The governing principle is easily stated. If a [Federal] rule of evidence covers a disputed point of evidence, the Rule is to be followed, *even in diversity cases*, and state law is pertinent only if and to the extent the Rule makes it so.

C. Wright, A. Miller & E. Cooper, 19 *Federal Practice and Procedure* § 4512 at 190 (1982) (emphasis added). *See also* 10 *Moore's Federal Practice* § 57 (1982).

In the keystone case of *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the United States Supreme Court upheld the application of Rule 4(d)(1) of the Federal Rules of Civil Procedure in federal trial proceedings despite the argument that Massachusetts law under *Erie* should control the adequacy of service of process in a diversity case. Although the application of the Federal Rule would be "outcome determinative," the Court noted that Rule 4(d)(1) had been recommended by the Advisory Committee to the Federal Rules and promulgated by the Supreme Court, subject to the review of Congress. In this situation, the Advisory Committee, the Supreme Court, and Congress had made an initial determination that the rule in question was procedural and, therefore, within the proper province of Congress and the courts to promulgate. Thus, according to the Court in that case:

When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court and Congress erred in their *prima facie* judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions. *Id.* at 471, 85 S.Ct. at 1144. The Court found that Congress has the power to promulgate rules for application in federal courts:

For the constitutional provision for a federal court system (augmented by the Necessary and Proper Clause) carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either.

*Id.* at 472, 85 S.Ct. at 1144. In this case, to hold that a state rule of evidence supplants a federal evidentiary rule even if it were promulgated by the use of the same procedure as is utilized in the case of the Federal Rules of Civil Procedure would be, in essence, to hold that the Federal Rule exceeds the power of Congress to promulgate it because it cannot "rationally" be classified as procedural. It is significant to note that no federal rule of procedure or evidence has *ever* been struck down as exceeding Congress' constitutional power.[6]

This Court is satisfied that the *Hanna v. Plumer* test applies to the Federal Rules of Evidence as well as to the Federal Rules of Civil Procedure. *E.g., Gibbs v. State Farm Mutual Ins. Co.*, 544 F.2d 423, 428 n. 2 (9th Cir.1976). The actual circumstances of the promulgation of the Federal Rules of Evidence makes it even more compelling that the same result be obtained by the application of the *Hanna v. Plumer* test to those Rules. After the Rules were drafted by the Advisory Committee, the Supreme Court reported the new Rules to

---

**6.** The *Hanna v. Plumer* test for evaluating the Federal Rules of Civil Procedure under *Erie* was unanimously reaffirmed recently by the Supreme Court in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). Indeed, in *Walker* the Court states that the Federal Rules of Civil Procedure are not to be construed narrowly to avoid conflict with state rules: "The Federal Rules should be given their plain meaning. If a direct collision with state law arises from that plain meaning, then the analysis developed in *Hanna v. Plumer* applies." 446 U.S. at 750, n. 9, 100 S.Ct. at 1985, n. 9. There could be no more direct conflict than in the case at bar. Federal Rule of Evidence 407 explicitly prohibits the introduction of evidence of subsequent remedial repairs to prove negligence or culpable conduct while Maine Rule of Evidence 407 explicitly permits the introduction of that evidence for that purpose.

Congress under the Rules Enabling Act, 28 U.S.C. § 2072. Because the new Rules were controversial, Congress intervened, rewrote the Rules where Congress deemed such rewriting appropriate, and then enacted them as so rewritten directly. Congress placed no reliance on either the Rules Enabling Act or the Rules of Decision Act, 28 U.S.C. § 1652. *See* Rules of Evidence, Pub.L. 93–595, 88 Stat. 1926 (1974). The effect of this enactment is clear:

> Because the Rules of Evidence were enacted directly by Congress, their validity *vis-a-vis* state law and the principles of the *Erie* doctrine stands on even firmer ground than that of the Rules of Civil Procedure. They are not subject to the Rules of Decision Act or (unlike the Rules of Civil Procedure) to the Rules Enabling Act. Their validity is governed solely by the Constitution, but since all of the Evidence Rules can rationally be viewed as rules of procedure (the constitutional standard announced in *Hanna v. Plumer*), they all clearly are constitutional.

C. Wright, A. Miller & E. Cooper, supra, § 4512 at 192–93 (footnotes omitted). *See also In Re Air Crash Disaster*, 701 F.2d 1189, 1193 (7th Cir.1983) (Federal Rules of Evidence apply in diversity cases; collecting cases); *Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883, 885 (5th Cir.1983) (Federal Rules including Fed. R.Evid. 407, apply in diversity cases); *Garbincius v. Boston Edison Co.*, 621 F.2d 1171, 1174 (1st Cir.1980) (Federal Rules of Evidence on expert witnesses control in diversity cases).

■ It is to be noted that in enacting the Federal Rules of Evidence, Congress paid considerable deference to state evidentiary practice by explicitly incorporating state evidentiary practice where Congress thought that to be warranted. *See, e.g.,* Fed.R.Evid. 302, 501 and 601. In addition, Congress did not alter such "substantive" state rules of evidence as the parol evidence rule, the collateral source rule, and the Statute of Frauds. *See C. Wright, A. Miller & E. Cooper* § 4512 at 194–95. However, in Rule 407 Congress did enact a uniform rule governing the admission of evidence of subsequent remedial measures and that rule must be followed unless it can be shown to be unconstitutional because it cannot "rationally" be considered procedural under the *Hanna* test. Federal Rule 407, as enacted by Congress, is the identical rule drafted by the Advisory Committee and reported to Congress by the Supreme Court. *Compare* 56 F.R.D. 183, 225 (1973) *with* Pub.L. 93–595. Thus, this Court would have to hold in order to supplant that rule with the Maine Rule of opposite effect not only that Congress exceeded its constitutional power in promulgating the rule, but that it did so upon the considered recommendation of the Advisory Committee and of the Supreme Court. To date, all of the published judicial discussions of which this Court is aware on this issue have concluded that Rule 407 of the Federal Rules of Evidence should be applied to state claims tried by a federal court deriving its jurisdiction from the diversity of citizenship of the parties. *See Grenada Steel, supra; Oberst v. International Harvester Co.*, 640 F.2d 863, 867–68 n. 2 (7th Cir.1980) (Swygert, J., concurring and dissenting in part) (dictum).

Accordingly, the Court is satisfied that Federal Rule 407 governs the admissibility of evidence of subsequent remedial measures in this diversity case and that the Court may not supplant that rule by applying the provisions of Maine Rule 407.

### B.

■ Having determined that Federal Rule 407 applies in this case, the Court must next determine whether or not the evidence of any subsequent remedial measures undertaken by Defendant Daniel may be relevant and admissible with respect to issues other than Daniel's negligence or conduct in respect to the accident in question. Inextricably wrapped up in that question, however, is the issue of whether a decision on admissibility may properly be made by a pretrial ruling in the circumstances of the issues as they are now

posed. Motions *in limine* are properly addressed to the discretion of the trial judge. *See Gendron v. Pawtucket Mutual Ins. Co.*, 409 A.2d 656, 659 (Me.1979). The Court is satisfied from its review of the written submissions, the oral arguments of counsel, and its review of the pleadings on file in this case that there will be open for pursuit at trial genuine issues of material fact as to Daniel's responsibility for the placement and securing of the vertical concrete pipe risers on the occasion of the decedent's injury. Ancillary to that specific issue, there will also be open issues as to the feasibility of the methods employed to place and secure the vertical concrete pipe risers. In the face of contentions put forth by the Plaintiff and Commercial, there is a potential issue as to Daniel's active control over that aspect of the work sufficient to cast upon it any responsibility to see that those tasks were properly performed. Both the Plaintiff and Commercial strenuously contend that subsequent remedial measures reflecting that such control was actually exercised may be relevant as tending to establish the prior existence of Daniel's control for that purpose and Daniel's implied acknowledgment of responsibility for that function. Additionally, Plaintiff suggests that such evidence may be relevant in establishing the state of Daniel's knowledge with respect to adequate methods of placement and securing of the vertical concrete pipe risers.

Whether or not these issues are in fact generated by the evidence at trial and exploited by respective counsel can only be determined at trial. Further, the relevance of specific evidence of remedial measures on subsequent occasions, on this project or on other projects, can only be, this Court is satisfied, determined in the context of the state of the evidence at the time that proof of subsequent remedial measures is offered in evidence. These relevancy questions may well be complex, subtle and may partake in large measure of the exercise of the Court's discretion. This is especially true if the balancing test of Fed.R.Evid. 403 were to be invoked with respect to the admissibility of such evidence.

It is this Court's conviction that issues so posed as to the admissibility of evidence of subsequent remedial measures cannot be determined in advance of trial. The Maine Law Court, dealing with the question of appropriate use of the vehicle of *in limine* motions in the context of the Maine Rules of Evidence provisions, which are parallel to those of the Federal Rules of Evidence, has delineated with insight the principal reason why these motions "should be used only on extraordinary occasions." *Gendron*, 409 A.2d at 660 n. 10. The Court states, "the trial judge will be alert to the possibility that in certain cases a ruling on the admissibility of the challenged evidence may not be appropriate *in limine* because his ruling may require an evaluation of the evidence actually adduced at trial." *Id.* This is precisely the situation that prevails here. To undertake to determine the admissibility of this testimony on these issues as to which it is offered under the second sentence of Fed.R.Evid. 407, would be an unwarranted and unfounded prognostication about the relevance of the evidence in a context that cannot now be definitively delineated.

Accordingly, and for the reasons set forth hereinabove, Daniel's motion is *GRANTED* to the extent that the Plaintiff and Commercial shall be barred from producing evidence of subsequent remedial measures by Daniel in respect to the placement and securing of the vertical concrete pipe risers for the purpose of establishing negligence or other culpable conduct of Daniel in respect thereto; the motion is *DENIED* with respect to any such evidence offered by Plaintiff and Commercial pursuant to the second sentence of Fed.R.Evid. 407 for purposes included within the compass of that sentence, the Court reserving for trial all rulings on the admissibility of such evidence offered for such purposes.

So ORDERED.