DECISION
Before the Court for decision are two motions in limine and a motion for partial summary judgment filed by Plaintiff. Defendants object to Plaintiff's motions. For the reasons discussed herein, this Court denies Plaintiff's motions in limine, and grants, in part, Plaintiff's motion for partial summary judgment.
 I Facts and Travel
This matter arises out of the alleged lead paint poisoning of Jesus Rivera (Rivera) while he was a tenant at Angel Jorge and Ana Garcia's (Defendants) owner occupied, three-family home located at 40 Wallace Street in Providence, Rhode Island. Rivera was born in Puerto Rico in 1997, and moved to the Wallace Street home with his mother, Irma Maldonado (Plaintiff), in April of 2000. Rivera lived at the Wallace Street address with his mother, his sister, and his grandmother until December of 2000. *Page 2 
On September 26, 2002, Plaintiff filed the within action alleging, inter alia, that on or about July 14, 2000, Rivera was diagnosed with lead poisoning.[1] Plaintiff further alleges that on July 26, 2000, a representative from the Rhode Island Department of Health (DOH) inspected the dwelling at 40 Wallace Street and "confirmed the existence of lead paint exposure hazards throughout the dwelling." (Pl.'s Compl. at ¶ 8.) Thereafter, on September 7, 2000, Plaintiff alleges, the DOH issued a Notice of Violation to Defendant Angel Jorge, notifying him of the existence of lead paint exposure hazards present "in the dwelling at 40 Wallace Street, Providence, Rhode Island, in violation of the Lead Poisoning Prevention Act (RIGL 23-24.6 et seq), the Rules and Regulations for Lead Poisoning Prevention (R23-24.6-PB) and the Housing Maintenance and Occupancy Code (RIGL 45-24.3 et seq.)." (Compl. at ¶ 9.) Plaintiff's Complaint charges Defendants with "Negligence" (Count I), "Negligent Misrepresentation and Omissions" (Count II), and seeks, inter alia, "Punitive Damages" (Count III).
On September 18, 2008, the Court heard the following motions:
 1) Plaintiff's Motion in Limine to Exclude Nancy Hebben, PhD.
 2) Plaintiff's Motion in Limine to Exclude Brian Pape, PhD.
 3) Plaintiff's Motion in Limine to Exclude Testimony and Evidence Concerning the "Venous or Fingerstick" Issue.
 4) Plaintiff's Motion for Partial Summary Judgment, and
 5) Defendants' Motion in Limine to Exclude the Testimony and Report of Plaintiff's Designated Expert, Theodore Lidsky, PhD. *Page 3 
After considering the memoranda presented, the Court at oral argument granted, in part, Plaintiff's motion concerning Nancy Hebben, Ph.D. The Court noted that Dr. Hebben is a neuropsychologist, and ruled that she may testify "to anything related to that qualification." (Tr. of September 18, 2008 Hr'g at 50.) Later, during the hearing, Defendants withdrew their motion concerning Plaintiff's expert Dr. Lidskey. (Id. at 64.) With respect to the three remaining motions — Plaintiff's Motion in Limine to Exclude Brian Pape, Ph.D. Plaintiff's Motion in Limine to Exclude Testimony and Evidence Concerning the "Venous or Fingerstick Issue, and Plaintiff's Motion for Partial Summary Judgment — the Court reserved judgment and will address them in this decision.
 II Analysis A Motions in Limine
In BHG, Inc. v. F.A.F., Inc., 784 A.2d 884 (R.I. 2001), the Court noted that:
 A motion in limine is `widely recognized as a salutary device to avoid the impact of unfairly prejudicial evidence upon the jury and to save a significant amount of time at the trial.' Ferguson v. Marshall Contractors, Inc., 745 A.2d 147, 150 (R.I. 2000) (quoting Gendron v. Pawtucket Mutual Insurance Co., 409 A.2d 656, 659
(Me. 1979)). It is well settled that `a motion in limine is not intended to be a dispositive motion.' Id. (citing Gendron, 409 A.2d at 660). Instead, `it has been used in this state primarily to prevent the proponent of potentially prejudicial matter from displaying it to the jury . . . in any manner until the trial court has ruled upon its admissibility in the context of the trial itself.' 745 A.2d at 150-51 (quoting State v. Fernandes, 526 A.2d 495, 500 (R.I. 1987)). BHG, Inc., 784 A.2d at 886. *Page 4 
 1. Plaintiff's Motion in Limine To Exclude the Testimony of Brian Pape, PhD.
Plaintiff has filed a motion in limine to exclude, or in the alternative, to limit, the testimony of Defendants' expert, Dr. Brian Pape (Dr. Pape). Dr. Pape has expressed two opinions which are in dispute in this case.[2] Both opinions relate to the drop in lead level from 43 mcg/dL on July 14, 2000 to 8 mcg/dL on July 26, 2000. Dr. Pape has opined that such a drop is "unexpected" and could be the result of laboratory error. Plaintiff argues that Dr. Pape's opinions, as expressed in his report and during his deposition, "lack foundation" and "are purely speculative." (Pl. memo at 1.) Plaintiff further argues that Dr. Pape "lacks the necessary education, training and experience to qualify him to offer any expert opinion on the ultimate issue in this case." Id. at 1-2. The Court disagrees with Plaintiff and denies her motion in limine.
As noted by Plaintiff, Rule 702 of the Rhode Island Rules of Evidence governs the use of expert testimony. "A witness qualified as an expert by knowledge, skill, experience, training, or education" may testify on "scientific, technical or other specialized knowledge that will assist the jury in understanding the evidence or in determining a fact issue."State v. Botelho, 753 A.2d 343, 347 (R.I. 2000). However, the trial court has discretion with respect to whether to admit or exclude a witness's expert testimony. Id. Essential elements of that discretion, before an expert's testimony is admitted, are "whether the testimony sought is relevant, within the witness's expertise, and based on an adequate factual foundation." State v. Bettencourt, 723 A.2d 1101, 1112
(R.I. 1999). Further, pursuant to Rule 403(b), the Court must also determine whether the probative value of the evidence offered through expert testimony is "substantially outweighed by the danger of unfair prejudice" if the testimony is admitted. R.I. Rules of Evid. 403(b). *Page 5 
Plaintiff's suggestion that Dr. Pape's opinions are speculative and are unsupported by the evidence in this case is not factually correct. Dr. Pape contends that the rapid drop in blood-lead level from July 14, 2000 to July 26, 2000 is "unexpected." Standing alone, this conclusion can be considered speculative. However, there is evidence in the record of this case supporting such an opinion. In a letter from Dr. Hebben to Defendants, Dr. Hebben notes that the elimination or "half-life"[3] of lead in blood is 35 or 36 days. (Pl.'s Ex. C at 7; see also Nationwidev. Mekiliesky, 976 F. Supp. 351, 355 (Md. Dist. Ct. 1997) (where a doctor noted "the half life of lead in the human body is approximately one month. . . ."). For the purpose of this motion, the Court takes judicial notice of this fact. See, e.g., Colonial Plumbing Heating v.Contemporary Construction Co., 464 A.2d 741, 742 (1983) (citingMcCormicks Handbook of the Law of Evidence § 329-30 (2d ed. Cleary 1972.)) (where the Court noted, "courts may take judicial notice of two categories of facts. One category consists of facts generally known with certainty by all reasonably intelligent people in the community, and the other consists of facts capable of accurate and ready determination by resort to sources of indisputable accuracy."). The Court finds that while the half-life of lead in blood is certainly not a fact generally known by people in the community, it is capable of accurate and ready determination by resorting to sources of indisputable accuracy.
Upon accepting that the half-life of lead in blood is 35 or 36 days, Dr. Pape's opinion that the reading of 43 mcg/dL on July 14, 2000 is "unexpected," given the reliable reading of 8 mcg/dL only twelve days later, is supported. Using simple math, it can be determined that the "expected" reading on July 14, 2000, given a 36-day half-life and the 8 reading twelve days later, *Page 6 
would be approximately eleven.[4] Given that the questioned measured change, from 8 to 43, is over eleven times the "expected" change, Dr. Pape's opinion that the reading on July 14, 2000 is unexpected is neither speculative nor lacking in foundation.[5] Accordingly, Plaintiff's motion to exclude Dr. Pape's testimony is denied. Defendants are free to allow Dr. Pape to testify as to the "unexpected" drop in blood-lead levels, and Plaintiff is free to counter with her expert, who Plaintiff has indicated in her memo will testify that such a drop, while somewhat rare, occurs on a regular basis. This Court is satisfied that such testimony is relevant, its probative value is not outweighed by any danger of unfair prejudice, and Plaintiff's opinion that it will mislead or confuse the jury is not shared by the Court.
Further, Plaintiff also seeks to block the testimony of Dr. Pape concerning his conclusion that the 43 mcg/dL reading on July 14, 2000 is inaccurate because of its vast deviation from the expected. Dr. Pape has opined that the reading is inaccurate because of, inter alia, either laboratory error, or that the reading was taken by the "fingerstick" method which is less reliable than other methods of testing. Because the Court has decided to allow Dr. Pape to testify as to the unexpected nature of the reading, his opinion as to the cause of the unexpected measure will also be allowed. Again, the Court finds such testimony neither speculative nor misleading, and holds that the jury must determine its value. *Page 7 
 2. Plaintiff's Motion in Limine To Exclude Testimony andEvidence Concerning the "Venous or Fingerstick" Issue
Plaintiff has also filed a motion seeking to exclude all evidence and testimony on the issue of whether the blood test given to Jesus Rivera on July 14, 2000, which indicated a blood-lead level reading of 43 mcg/dL, was administered by the "venous," or by the "fingerstick" method. Plaintiff argues that there is overwhelming evidence indicating that the test administered on July 14, 2000 was by the "venous" method, and allowing any evidence to the contrary would confuse or mislead the jury. Defendants object, arguing that the contradiction in the medical records regarding the type of test given is relevant, and it is the role of the jury to weigh the evidence and determine its credibility. The Court agrees with Defendants.
Within the record is a document entitled "Pedi Problem Sheet" from Family Health Services, which is the primary care institution that performed Jesus Rivera's routine lead screening on July 14, 2000. (Def.'s Exhibit B.) The sheet indicates, under the section labeled "Problem-Acute," "Elevated lead on fingerstick." (Emphasis in original.) Further down the sheet, there are three notations under the category, "Lead." The notations indicate "7/00, 43 (FS); 7/00, 8 (V); and 8/00, 7 (V)."
The existence of this document sufficiently brings into question the type of test administered on July 14, 2000. Accordingly, the jury must be allowed to hear the evidence as to which type of test was administered, and must reach its own conclusion on the issue. Accordingly, Plaintiff's motion to exclude evidence on the issue is denied. *Page 8 
 B Summary Judgment 1. Standard of Review
"Summary judgment is proper if no genuine issues of material fact are evident from `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' and, in addition, the motion justice finds that the moving party is entitled to prevail as a matter of law." Lavoie v. N.E. Knitting, Inc.,918 A.2d 225, 227-228 (R.I. 2007) (citing Super. R. Civ. P. 56(c)). It is well-settled that a genuine issue of material fact is one about which reasonable minds could differ. See, e.g., Brough v. Foley, 572 A.2d 63,67 (R.I. 1990).
The moving party bears the initial burden of establishing that no such issues exist. Heflin v. Koszela, 774 A.2d 25, 29 (R.I. 2001). If the moving party is able to sustain its burden, then the "litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Am. Express Bank, FSB v. Johnson, 945 A.2d 297,299 (R.I. 2008) (citations omitted). Although the opposing party must demonstrate evidence beyond mere allegations, it need not disclose all of its evidence. See, e.g., Ludwig v. Kowal, 419 A.2d 297, 301 (R.I. 1980); Nichols v. R.R. Beaufort Assocs., Inc., 727 A.2d 174, 177 (R.I. 1999); see also Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (citations omitted).
The trial judge reviews the evidence without passing upon its weight and credibility, and will deny a motion for summary judgment if the party opposing the motion has demonstrated the *Page 9 
existence of a triable issue of fact. See Mitchell v. Mitchell,756 A.2d 179, 181 (R.I. 2000); Palmisciano v. Burrillville Racing Ass'n.,603 A.2d 317, 320 (R.I. 1992). However, the Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."Lavoie, 918 A.2d at 227-228.
 2. Plaintiff's Motion for Partial Summary Judgment
Plaintiff has filed a motion for partial summary judgment "on the issues of negligence [sic] and proximate causation." (Pl.'s motion at 1.) For the following reasons, Plaintiff's motion is granted only as to the issue of "duty."
It is well-settled that "[t]o establish a cause of action for negligence, a complaint must allege facts demonstrating the defendant's legal duty of care owed to the plaintiff, the defendant's breach of that duty of care, injury to the plaintiff as a result of the breach proximately caused by the defendant's negligent conduct, and damage to the plaintiff." Volpe v. Fleet Nat'l Bank, 710 A.2d 661, 663 n. 4 (R.I. 1998) (citing Lutz Engineering Co. v. Industrial Louvers, Inc.,585 A.2d 631, 635 (R.I. 1991)). Accordingly, to establish a cause of action for negligence, a plaintiff is required to establish four elements. Pared down, these elements are duty, breach, causation, and damages.
For over 50 years, our Supreme Court has recognized the admission of a violation of a statute as evidence of negligence. Sitko v.Jastrzebski, 68 R.I. 207, 210, 27 A.2d 178, 179 (1942). InSitko, the Court stated:
 [W]here there is the violation of an ordinance that prohibits the doing of a certain act or commands its performance and a person is injured by reason of the very commission or omission of such act, it has been held that the ordinance may be admitted in evidence and its violation proved as evidence of negligence. . . . `Although the violation of the statute or ordinance may not itself be a ground *Page 10 
of action, yet, if the violation of the duty imposed for the safety of the public is the cause of the injury, evidence of the violation is prima facie evidence of negligence.' Id. (citations omitted).
This proposition was later clarified in Clements v. Tashjoin,92 R.I. 308, 313-314, 168 A.2d 472, 474 (1961), where the Rhode Island Supreme Court stated:
 This court long ago declared that the violation of a statute or an ordinance was not of itself ground for a civil action unless such right was annexed thereto, . . . or unless it prescribed a duty for the benefit of a particular class of persons. . . . And some years later . . . it was expressly held that if the duty imposed by the statute was for the safety of the public, violation of it would be prima facie evidence of negligence but not negligence per se. . . . And while we . . . recognized that violation of the law was evidence of negligence, we required the plaintiff to prove that the violation was the direct and proximate cause of the injury and not merely a condition or circumstance which furnished the occasion therefor. Clements v. Tashjoin, 92 R.I. at 313-314, 168 A.2d at 474
(citations omitted).
Collectively, the case law supports the proposition that a violation of a statute, which itself creates a duty to the public, may be relied on by a plaintiff as evidence of the existence of a duty and the breach of that duty.
The Rhode Island Housing Maintenance and Occupancy Code, the Rhode Island Residential Landlord and Tenant Act, the Lead Poisoning Prevention Act, and the Rules and Regulations for Lead Poisoning Prevention were enacted to protect the public from the health risks associated with lead paint exposure. See G.L. 1956 (1996 Reenactment) §§ 23-24.6-2 and 23-24.6-3. Therefore, Plaintiff may rely on violations of these statutes as evidence of Defendants' duty and breach of that duty, although Plaintiff necessarily also must establish causation and damages to prevail on her claims. See Clements, 92 R.I. at 313-314,168 A.2d at 475. However, in so holding, this Court does not elevate a violation of these statutes as per se *Page 11 
breach of duty. To do so would cause a violation to be equivalent to strict liability, something not indicated within the statutes. While the issue of duty cannot be argued in this case and the Court grants summary judgment as to that element, [6] the issue of breach must be determined by the trier of fact. Plaintiff's evidence of Defendants' violations and of Defendant Jorge's knowledge of the dangers of lead paint, while certainly evidence of breach, is not enough upon which to grant summary judgment on the issue. Defendants are entitled to present evidence, and have presented evidence in opposition to this motion, regarding measures undertaken in compliance with the statutes listed above. Defendants have shown that they took remedial steps to combat the existence of the lead paint. As noted by Defendants, unlike Massachusetts, [7] Rhode Island is a "lead safe" state. Accordingly, the issue of whether the Defendants breached their duty to Plaintiff must be decided by the trier of fact.
Finally, like the issue of breach in this matter, the issue of causation must be determined by the trier of fact. See Splendorio v.Bilray Demolition Co., 682 A.2d 461 (R.I. 1996) (The determination of proximate cause is ordinarily a question of fact that should not be decided by summary judgment.). Defendants have presented enough evidence to defeat a motion for summary judgment on the issue of whether they caused injury to Rivera. As noted above, the issue of whether the 43 mcg/dL blood-lead level reading was accurate must be determined by the trier of fact. Accordingly, summary judgment must be denied as to the element of causation. *Page 12 
 IV Conclusion
In attempting to employ "trial by motion," Plaintiff is overreaching. Both of Plaintiff's motions in limine are denied. The evidence provided by Defendant regarding the motions is relevant, not speculative, and will neither confuse nor mislead the jury. Further, Plaintiff's motion for partial summary judgment regarding the elements of negligence is granted in part. Plaintiff is entitled to summary judgment only as to the issue of whether Defendant owed a duty in this case. However, the issues of breach and causation, due to both their fact intensive nature and the evidence presented by Defendants, must be decided by the trier of fact.
Counsel shall prepare the appropriate judgment for entry.
[1] Records show that on July 14, 2000, a test revealed that Rivera's blood-lead level was 43 mcg/dL. The type of test administered, which revealed this result, is in dispute. Subsequent testing revealed blood-lead levels of 8 mcg/dL on July 26, 2000; 7 mcg/dL on August 2, 2000; and 6 mcg/dL on August 12, 2000. It is undisputed that the blood tests administered subsequent to July 14th were the "venous" method.
[2] Defendant conceded during oral argument that Dr. Pape's opinion regarding biochemical effects of lead should be excluded. (Tr. of September 18, 2008 motion hearing at 20.)
[3] "Half-life" is defined, inter alia, as "the time required for half the amount of a substance in or introduced into a living system to be eliminated whether by excretion, metabolic decomposition, or other natural process. Webster's Third New International Dictionary, 1022 (1981).
[4] 8 + (12/36 x 8) = 10.667.
[5] Further support that Dr. Pape's opinion is not speculative can be found where Plaintiff notes that Dr. Pape, during his deposition was asked what he thought the reading should have been on July 14, 2000. Dr. Pape replied, "somewhere around 10 or 15." (Tr. of September 18, 2008 Hr'g at 51.)
[6] Defendants did not argue that they didn't owe a duty in this case. Rather, their objection centered on the issues of breach and causation.
[7] By contrast, Massachusetts is a "lead free" state and employs a strict liability standard.