Daniel A. FERGUSON, et al.,

v.

MARSHALL CONTRACTORS, INC., d.b.a. Algonquin Builders, and Bennington Iron Works,

v.

Ajax Construction Company.

No. 98–440–Appeal.

Supreme Court of Rhode Island.

Feb. 10, 2000.

R. Daniel Prentiss, Providence, for plaintiff.

Michael Colucci, Warwick, Thomas P. Frederico, Michael T. Sullivan, Warwick, Stephen P. Harten, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

**OPINION**

WEISBERGER, Chief Justice.

This case comes before us on an appeal by the cross-claimant, Marshall Contractors, Inc. d.b.a. Algonquin Builders (Marshall), from a judgment entered in the Superior Court in favor of Bennington Iron Works (Bennington), the codefendant, against whom the cross-claim was filed. We vacate the judgment and remand the case to the Superior Court for a trial on the merits. The facts insofar as pertinent to this appeal are as follows.

Marshall was the general contractor on a project to build a manufacturing facility in Dartmouth, Massachusetts, for the Titleist Golf Division of the Acushnet Company (Titleist). Marshall entered into a contract with Bennington to provide the steel for the project. Bennington in turn contracted with Ajax to do the steel-construction work. According to Ajax, Bennington provided the steel material for the project and Ajax provided the labor.

The plaintiff, Daniel Ferguson (Ferguson), was an employee of Ajax when he was injured while working on this project. He collected workers' compensation benefits, but then brought suit against Marshall and Bennington for their alleged negligence in connection with his injury. Marshall filed a cross-claim against Bennington for indemnity and contribution, but that claim was severed from the Ferguson negligence claims at the time of trial before any evidence was presented. After the presentation of Ferguson's evidence, Bennington moved for and was granted a directed verdict. Thereafter, the jury returned a verdict for Ferguson and against Marshall in excess of $1 million. After Marshall's motion for a new trial was denied, it appealed the denial of its new-trial motion and the granting of the directed verdict in favor of Bennington.

After a show-cause hearing, this Court entered an order denying the appeal and affirming the judgment of the Superior Court. *Ferguson v. Marshall Contractors,* 644 A.2d 310 (R.I.1994) (*Ferguson I*). In our order affirming the judgment of the Superior Court we pointed out that Marshall had not opposed the granting of the directed verdict in favor of Bennington at the trial stage and, therefore, had no basis for challenging the directed verdict on appeal. It should be noted that Marshall had presented no evidence against Bennington at the initial trial of the case and had presented no evidence of any kind before the granting of a directed verdict by the trial justice in favor of Bennington and against Ferguson. The case was then returned to the Superior Court for further proceedings in respect to Marshall's cross-claim against Bennington.

In the Superior Court, Bennington moved for summary judgment against Marshall on its cross-claim on the ground that the issue of duty vis-à-vis Bennington had been decided when the trial justice in the Ferguson trial directed a verdict in Bennington's favor. A justice of the Superior Court denied that motion on the ground that there were issues of material fact concerning Marshall's right to indemnification against Bennington on its cross-claim. He held that this issue had not been resolved in the first trial. Marshall also filed a third-party complaint against Ajax for indemnification. Ajax moved for summary judgment on the third-party complaint, and Bennington again moved for summary judgment in respect to Marshall's cross-claim. A second justice of the Superior Court granted Ajax's motion for summary judgment, but denied Bennington's motion for summary judgment on the ground of the doctrine of the law of the case even though certain requests for admission had been made subsequent to the first denial of Bennington's motion. These requests had been admitted and related largely to a description of the prior proceedings at the first trial. Marshall appealed from the entry of summary judgment in favor of Ajax. We denied this appeal in *Ferguson v. Marshall Contractors, Inc.,* 707 A.2d 660 (R.I.1998) (*Fergu-*

*son II* ). We held in *Ferguson II* that there was no contractual basis upon which Marshall could claim indemnity as against Ajax. In the absence of such a contractual basis Ajax was entitled to the benefit of the exclusivity provision of the Workers' Compensation Act since Ajax was the employer of Ferguson. *See* G.L.1956 § 28–29–20.

At this point two justices of the Superior Court had denied motions for summary judgment by Bennington in respect to Marshall's cross-claim. The case was then presented to a third justice of the Superior Court for trial. Before the trial began, Bennington filed a motion in limine that sought to exclude all evidence that Bennington owed any duty to Ferguson. After considerable oral argument and colloquy among the court and counsel the trial justice granted the motion in limine, excluding any evidence of Bennington's duty to Ferguson and in effect precluding Marshall from attempting to introduce evidence in support of its alleged right to indemnity. For all practical purposes, the motion in limine was treated as a motion for summary judgment, and after it was granted, the trial justice entered judgment in favor of Bennington. It was agreed by all parties that after the granting of the motion in limine Marshall would be unable to proceed in order to establish its right to indemnity as against Bennington. Thus the granting of the motion in limine could be interpreted only as in effect granting a motion for summary judgment on the ground that Marshall was collaterally estopped from proving its case against Bennington by reason of the directed verdict entered against Ferguson and in favor of Bennington at the first trial. With this result we respectfully disagree.

Marshall raises several issues on appeal, and although we are of the opinion that the principal issue raised is a challenge to the implicit ruling in respect to collateral estoppel, we shall nevertheless consider each issue as it was raised in Marshall's brief.

## I. Motion in limine

### A.

Marshall's first argument on appeal is that the Superior Court justice should have denied Bennington's motion in limine virtually out of hand because it went beyond the appropriate scope of a traditional motion in limine and into the realm of a dispositive motion. Marshall argues that motions in limine have the limited purpose of helping to manage the trial and keeping extraneous facts from the jurors, not eliminating trials. Bennington, on the other hand, argues that a motion in limine was proper in this situation. Bennington argues that motions in limine speak to the admission or nonadmission of evidence, regardless of the quantity of evidence sought to be excluded. Bennington further argues that the question of duty owed was an evidentiary issue that had been conclusively decided in the original trial, and that the most efficient way to deal with the issue was through a motion in limine.

The motion in limine "has become widely recognized as a salutary device to avoid the impact of unfairly prejudicial evidence upon the jury and to save a significant amount of time at the trial." *Gendron v. Pawtucket Mutual Insurance Co.,* 409 A.2d 656, 659 (Me.1979). Initially, the motion was used "to prevent an adversary from mentioning the existence of evidence so highly prejudicial to the moving party that a motion to strike or an instruction by the trial judge to disregard the offending matter could not undo the harm that had been done." *Id.* at 660. As it has developed, it has become a tool for narrowing the issues at trial and enhancing the parties' preparation for trial. Despite this development, it seems clear that a motion in limine is not intended to be a dispositive motion. *See id.* at 660 n. 10. Rather, it has been used in this state primarily to "prevent the proponent of potentially prejudicial matter from displaying it to the jury *** in any manner until the trial court has ruled upon its admissibility in the context of the trial itself." *State v. Fer-*

*nandes,* 526 A.2d 495, 500 (R.I.1987) (quoting *Lagenour v. State,* 268 Ind. 441, 376 N.E.2d 475, 481 (1978)); *see also State v. Bennett,* 122 R.I. 276, 286, 405 A.2d 1181, 1186 (1979).

In *Bennett,* the defendant made an oral motion in limine seeking "to preclude the State from using certain convictions as an impeachment tool against [him] should he decide to take the witness stand ***." 122 R.I. at 277–78, 405 A.2d at 1182. The defendant, whose criminal record began in 1945, argued that the convictions that had occurred before 1953 were too remote. The trial justice refused to rule on the motion, and the defendant, who did not testify, was ultimately convicted of rape, kidnapping, and assault. The defendant appealed his conviction, and this Court sustained the appeal. In determining the propriety of a motion in limine, this Court noted that other courts have held that, although discretionary, a court "should, when feasible, make reasonable efforts to accommodate a defendant by ruling in advance on the admissibility of a criminal record so that he can make an informed decision whether or not to testify." *Id.* at 281, 405 A.2d at 1184 (quoting *United States v. Oakes,* 565 F.2d 170, 171–72 (1st Cir.1977)). Accordingly, this Court held that "a criminal defendant may utilize the procedural device of a motion in limine for the exclusion of evidence or other procedural limitations which might significantly affect his decision to testify either prior to trial, at the close of the state's evidence or at other appropriate times in advance of taking the stand to testify." *Id.* at 286, 405 A.2d at 1187. This holding applies both in criminal and civil cases. *See id.* at 286 n. 4, 405 A.2d at 1187 n. 4.

In our opinion the trial justice improperly used the motion in limine in the instant case. It appears that the purpose of a motion in limine is to exclude specific evidence that would otherwise be inadmissible or unfairly prejudicial to a party at trial. In the instant case, Bennington sought to exclude all evidence of duty owed by Bennington to Ferguson, not a particular piece of evidence. As such, the trial justice effectively made a final dispositive decision akin to a summary judgment by granting Bennington's motion in limine.

### B.

Marshall's next argument is that the trial justice should have denied Bennington's motion in limine in light of its dispositive effect on the ground that it was barred by the law-of-the-case doctrine because two other Superior Court justices had denied Bennington's motions for summary judgment based upon their conclusion that Marshall's claim against Bennington would not be barred by the principles of res adjudicata or collateral estoppel. Marshall argues that there was no difference between those summary judgment motions and Bennington's motion in limine, and that, therefore, the motion should have been denied. Bennington, however, argues that the law-of-the-case doctrine does not apply for three reasons: (1) because the record had been expanded following the first justice's denial of Bennington's motion for summary judgment; (2) because the second hearing justice's denial of Bennington's summary judgment motion was clearly wrong; and (3) to prevent manifest injustice by forcing Bennington to relitigate an issue that had already been conclusively determined.

The law-of-the-case doctrine "states that ordinarily, after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling." *Taveira v. Solomon,* 528 A.2d 1105, 1107 (R.I.1987) (quoting *Salvadore v. Major Electric & Supply, Inc.,* 469 A.2d 353, 355–56 (R.I. 1983)). Although particularly applicable when the rulings under consideration pertain to successive motions for summary judgment, "[t]he doctrine is still operative *** when the same question in the identi-

cal manner comes before the trial court in a different procedural context." *Goodman v. Turner*, 512 A.2d 861, 864 (R.I.1986). However, the doctrine does not apply "when 'evidence has been introduced in the interim that significantly extends or expands the record.'" *State v. Presler*, 731 A.2d 699, 703 (R.I.1999) (quoting *Richardson v. Smith*, 691 A.2d 543, 546 (R.I.1997)). "When presented with an expanded record, it is within the trial justice's sound discretion whether to consider the issue." *Goodman*, 512 A.2d at 864.

The law-of-the-case doctrine is not applicable when a second motion is based upon an expanded record. In *Presler*, the defendant was convicted of one charge of driving under the influence of liquor or drugs, death resulting, and of one charge of driving so as to endanger, death resulting. Before trial on the charges, the defendant moved to suppress the results of blood alcohol tests that had been performed at the hospital. That motion was granted by a Superior Court hearing justice, and the state filed an interlocutory appeal. We reversed, upholding the propriety of the hospital's blood taking and the admissibility of the test results. *See Presler*, 731 A.2d at 701. Thereafter, the defendant filed a second motion to suppress the test results, reiterating essentially all the allegations and reasons from the first motion, and adding a new allegation and challenge to the admissibility of the test results. This motion was denied by a different justice of the Superior Court, and the defendant was ultimately convicted. On appeal, we held that if the case were truly a law-of-the-case matter,

> "the defendant's additional and new allegation contained in his second motion to suppress might well have actually served to rescue his motion from the non-final aspect of the law-of-the-case doctrine and permitted its reconsideration by the second Superior Court trial justice. That would result because of the second motion's additional allegation that the blood samples had been seized

at the direction of the State Police. That new allegation would generate new evidence and would result in an expanded record." *Id.* at 703.

■ In the instant case, Bennington initially filed a motion for summary judgment, arguing that it had been absolved of liability in the original trial. That motion was denied on the ground that the issue in respect to Marshall might not have been fully resolved. Bennington made the same argument before another Superior Court justice in another summary judgment motion a year later. That motion was again denied. Undaunted, Bennington filed the instant motion in limine at the start of the second trial, once again arguing that the duty issue had already been established in favor of Bennington and that Bennington had been absolved of all liability. That motion was granted by the trial justice, prompting Bennington to move successfully for entry of judgment in its favor, thus concluding the adjudication of Marshall's cross-claim.

The trial justice, in granting Bennington's motion in limine, ruled that the law-of-the-case doctrine did not apply because the first justice's reasons for denying summary judgment were not definitive enough to be binding and because the record had been expanded since further discovery had occurred after the summary judgment motion had been denied. Specifically, Bennington had sent a request for admissions to Marshall asking Marshall to admit (1) that the jury found that Marshall was negligent in the trial between Ferguson and Marshall, (2) that the trial judge did not include and/or charge on any theories of vicarious liability on the part of Marshall for the conduct of any subcontractors on the site, and (3) that Marshall was found to be negligent but not found to be vicariously liable for the conduct of the subcontractors. Marshall admitted No. 1, and admitted Nos. 2 and 3 with the explanation that the instruction was not warranted and that the jury had not been asked to determine the question of vicarious liability because

the cross-claim had been severed at the time of the original trial. The trial justice then ruled that the record had been expanded, "[h]owever slight."

The law-of-the-case doctrine should have been applied in this case. Before the motion in limine hearing, two different justices of the Superior Court had denied Bennington's motions for summary judgment. The first justice expressed concerns that the issue may not have been litigated; the second justice agreed, concluding that "it would be unfair to preclude [Marshall's] action from proceeding on the cross-claim" because of the law-of-the-case doctrine and because the cross-claim had been severed from the original trial. Through its motion in limine, Bennington sought reconsideration of the same issue that had already been denied on two separate occasions. That reconsideration was improper because the expansion of the record was not significant and had occurred before the denial of summary judgment by the second justice. In its request for discovery, Bennington did not add a new claim or charge, but merely requested admissions in respect to procedural events that had previously occurred in prior litigation. These events would have been the subject of judicial notice if no requests for admission had been filed. Furthermore, the requests for admission had been made and answered before consideration and denial of the second summary judgment motion.

For the foregoing reasons, this Court is of the opinion that the motion in limine was improperly used as a dispositive motion in this case. Moreover it should have been denied on the basis of the law-of-the-case doctrine. Nevertheless we shall consider Marshall's claim that the two prior justices who had denied motions for summary judgment were correct in declining to hold that Marshall was precluded by either res adjudicata or collateral estoppel from attempting to prove its right to indemnification or contribution.

## II. Res Adjudicata and Collateral Estoppel

Alternatively, Marshall argues that even if the trial justice appropriately considered the motion in limine, this Court should find that the trial justice committed an error of law by holding that Marshall's cross-claim was barred. First, Marshall argues that its claim against Bennington is not barred by res adjudicata because the actions in question did not have identity of parties or issues and because there had been no final judgment between the parties. Marshall argues that the first action was based on tort, whereas its action against Bennington is based on contract; that the first action was between Ferguson and Bennington, not between Marshall and Bennington; and that Bennington was granted a directed verdict before Marshall could introduce any evidence against it. Next, Marshall argues that its claim against Bennington is not barred by collateral estoppel because Marshall did not have a full, fair, and adequate opportunity to litigate its claim in the first action. Marshall argues that the prior action adjudicated the rights of Ferguson as against each codefendant, not the rights of the codefendants between themselves, and that the directed verdict in favor of Bennington was not the type of "final judgment on the merits" contemplated by the case law, in respect to Marshall.

### A. Res Adjudicata

Res adjudicata is not applicable in the instant case because the cross-claim that Marshall had against Bennington was severed from the negligence claim in the original trial. Res adjudicata "involves the effect of a final judgment between the parties to an original action and those in privity with such parties; *** [and] bars the relitigation of all the issues that were tried or might have been tried in the original suit." *Providence Teachers Union, Local 958, American Federation of Teachers, AFL—CIO v. McGovern,* 113 R.I. 169, 172, 319 A.2d 358, 361 (1974); *see also E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co.,* 635 A.2d 1181, 1186

(R.I.1994). Here, the original suit involved Ferguson's claim of negligence against Marshall and Bennington. Therefore, Ferguson would be barred from bringing another claim against either Bennington or Marshall, and Marshall would be barred from bringing another claim against Ferguson. However, since Marshall's cross-claim against Bennington was severed at the outset of the trial, it could not be litigated, and therefore, res adjudicata does not apply to the cross-claim.

### B. Collateral Estoppel

"Collateral estoppel, on the other hand, is the doctrine which renders conclusive in a subsequent action on a *different* claim the determination of particular issues actually litigated in a prior action." *Providence Teachers Union*, 113 R.I. at 172, 319 A.2d at 361; *see also E.W. Audet & Sons, Inc.*, 635 A.2d at 1186. The requirements for the application of collateral estoppel are "(1) an identity of issues; (2) a final judgment on the merits; and (3) an establishment that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action." *Providence Teachers Union*, 113 R.I. at 172, 319 A.2d at 361.

Marshall urges us to conclude that collateral estoppel does not apply in this case because the second requirement has not been met. Marshall argues that there has not been a final judgment because it was not given a full, fair, and adequate opportunity to litigate its cross-claim against Bennington. This Court has held that, in determining whether there has been a final judgment on the merits, "[a] general finding will not suffice, nor will a specific finding that was not fully litigated unless the [party] had notice that the issue was to be litigated fully at the hearing and had a fair opportunity to do so." *State v. Pineda*, 712 A.2d 858, 862 (R.I.1998) (quoting *State v. Chase*, 588 A.2d 120, 123 (R.I. 1991)). In regard to a full and fair opportunity to litigate, Marshall urges this Court to adopt the reasoning set forth in

*City of Burbank v. Glazer*, 76 Ill.App.3d 294, 32 Ill.Dec. 150, 395 N.E.2d 97 (1979), in which the defendant was permitted to pursue an indemnity claim against a former codefendant despite the fact that the codefendant was granted a directed verdict in the original trial.

In *Glazer*, the plaintiff, who had tripped and fallen on a sidewalk, sued the City of Burbank and Glazer, the owner of the sidewalk. Glazer was granted a directed verdict when the "court determined *** that Glazer was not negligent as contended by the plaintiff ***." *Id.*, 32 Ill.Dec. 150, 395 N.E.2d at 100. The City of Burbank was found liable to the plaintiff and filed a separate indemnification action against Glazer. Glazer moved to dismiss the action, arguing that the indemnification action was barred. The motion was granted. On appeal, the court held that

"[p]arties to an action are not bound by the judgment therein in subsequent controversies between themselves where they were not adversaries in the action in which the judgment was rendered and their rights and liabilities *inter se* were not put in issue and determined in that action. *** [I]t is well established that a judgment for or against two co-defendants, or for one co-defendant and against the other co-defendant, generally determines nothing as to their respective rights and liabilities, *inter se,* unless the issues were actively litigated between the two defendants in the first action." *Id.*, 32 Ill.Dec. 150, 395 N.E.2d at 100–01.

Our most recent pronouncement on the issue of collateral estoppel was set forth in *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 679–80 (R.I.1999). In that case, Commercial Union Insurance Company (Commercial) sought a declaratory judgment that it be relieved from further obligation to defend or indemnify Raymond Pelchat (Raymond) for liability under the wrongful death act. A probate court had already determined that Raymond was prohibited from inheriting from

the estate. The question arose as to whether the holding of the probate court was binding upon Commercial. We held that it was not. The Court observed:

"It is axiomatic that in order for collateral estoppel to apply, 'there must be an identity of issues; the prior proceeding must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding.' State v. Chase, 588 A.2d 120, 122 (R.I. 1991). The doctrine of collateral estoppel directs that an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings. Mulholland Construction Co. v. Lee Pare & Associates, Inc., 576 A.2d 1236, 1238 (R.I.1990).

"The administrator advanced this argument before the first trial justice, who concluded that collateral estoppel was not applicable. The justice explained: 'Even assuming the issue of applicability of the Slayer's Act was fully litigated and finally determined in the Probate Court [in 1991], this Court is of the opinion that the Probate Court's decree cannot estop Commercial Union from litigating the issue in this action. This is because Commercial Union was not a party to the proceedings in the Probate Court, nor was it in privity with Mr. Pelchat in that decision.'

"Under the concept of privity, a nonparty may be bound by a prior judgment if that party substantially controlled or was represented by a party to the original action. Restatement (Second) Judgments §§ 39, 41 (1982). 'Parties are in privity when "there is a commonality of interest between the two entities" and when they "sufficiently represent" each other's interests.' Studio Art Theatre of Evansville, Inc. v. City of Evansville, Indiana, 76 F.3d 128, 131 (7th Cir.), cert. denied, 519 U.S. 866, 117 S.Ct. 177, 136 L.Ed.2d 117 (1996) (quoting Tofany

v. NBS Imaging Sys., Inc., 597 N.E.2d 23, 29 (Ind.Ct.App.1992)); see also Providence Teachers Union, Local 958, American Federation of Teachers, AFL—CIO v. McGovern, 113 R.I. 169, 172, 319 A.2d 358, 361 (1974) (holding that collateral estoppel was not applicable because the treasurer was neither a party to, nor in privity with a party to the prior litigation). It is clear that Commercial Union and Raymond did not share a commonality of interests. In the declaratory judgment action, for example, Commercial Union argued that it should be relieved of defending Raymond in the wrongful death suit. Commercial Union's interest, therefore, conflicted with Raymond's interests." Id. at 680.

It is obvious that collateral estoppel bars a litigant from seeking to redetermine an issue of ultimate fact that actually has been litigated in a previous proceeding between the same parties or between parties in privity with them. See Annotation, Judgment in Action Against Codefendants for Injury or Death of Person, or for Damage to Property, as Res Judicata in Subsequent Action Between Codefendants as to their Liability Inter Se, 24 A.L.R.3d 318 (1969). The foregoing annotation summarizes the numerous cases in § 2 with the following synthesis:

"In specifying the criteria for application of the doctrines of res judicata and collateral estoppel to subsequent actions between codefendants as to their liability inter se where it appeared that in a prior action they were jointly sued for injury to or death of a person, or for damage to property, *** there is probably no area of our law less susceptible of rigid formulation and definition than that of res judicata. In final analysis *** the essence of all of them being that such a prior judgment is not conclusive in the subsequent action unless the codefendants occupied adversary positions in the prior action and actually litigated therein the issue of their liability inter

se as well as the issue of their liability to the injured party." *Id.* § 2 at 323.

The foregoing summary is consonant with our own case law in respect to the doctrine of collateral estoppel. It is also consonant with the general rule set forth in the Restatement (Second) *Judgments* § 38 (1982). For all intents and purposes, although Marshall was a party to the initial action in which Ferguson presented his claim against Bennington and Marshall, Marshall's cross-claim was severed at the outset of· the case and Bennington was removed from the case by a directed verdict before any presentation by Marshall. Thus, Bennington and Marshall at no point during the trial were adversary litigants inter se.

In the case at bar, Marshall had no opportunity to litigate its cross-claim against Bennington in the original trial because that cross-claim had been severed. It did litigate its liability as to Ferguson, but Ferguson was not in privity with Bennington, nor was Bennington in privity with Marshall. Marshall and Ferguson were obviously adverse parties. Any evidence that had been presented by Ferguson concerning Bennington's duty was controlled completely by Ferguson. Marshall had no opportunity to present evidence, nor did it seek to do so before the granting of the motion for directed verdict that removed Bennington from the case. Thus Marshall could not have litigated its claimed right of indemnification against Bennington either on contractual or equitable grounds of indemnification. Therefore, it was not barred by either res adjudicata or its subsidiary doctrine of collateral estoppel from seeking to present evidence in support of its claim when its case was called for trial in the Superior Court. It should not have been barred from so doing by the granting of the motion in limine.

For the reasons stated, the appeal of Marshall is sustained. The judgment of the Superior Court is vacated and the papers in the case are remanded to the Superior Court for trial of the cross-claim on its merits.