[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Margaret Gagnon, is the former executive director of the defendant, Housatonic Valley Tourism District Commission (Commission). She filed this action against the Commission and several of its individual commissioners for alleged wrongdoings related to the termination of her employment. The Commission now moves for summary judgment as to all counts in the complaint against it. The complaint alleges claims of: (1) wrongful termination; (2) wrongful withholding of wages and benefits; (3) a violation of General Statutes § 31-51q; (4) defamation and libel; and (5) intentional infliction of emotional distress. The defendant Commissioners, Lazlo Pinter (Pinter), Violet Mattone (Mattone) and Carl Landwehr (Landwehr), seek summary judgment individually as to the plaintiffs claims against them for defamation and infliction of emotional distress.
The plaintiff alleges that she was hired by the Commission as executive director on June 1, 1984, and worked for some twelve years, until June 14, 1996, when she was advised that she had the option of resigning or being terminated. The plaintiff alleges that the Commission, through its Commissioners, Joseph Riberio (Riberio), Pinter, Mattone and Landwehr, wrongfully terminated the plaintiff without cause or justification, that her employment was for a "long period of time" and was not to be terminated except for just cause, and the plaintiff relied upon the terms of the employment agreements in accepting and continuing her position, that the Commission's discharge of the plaintiff was in violation of its implied policy of fair dealing, and that the Commission attempted to gag the plaintiff from making comments on policies and procedures and such action was a violation of General Statutes § 31-51q.
The Commission argues that it is entitled to summary judgment as to these four counts because the plaintiff was an at-will employee of the Commission and there was no contract or other written or oral promises altering her at-will employment status. As to counts one, two and three, the Commission argues that the plaintiffs termination of employment did not violate any important public policy, the plaintiff resigned and was not discharged, and the plaintiff has not identified any protected speech or any related adverse action to her statements at Commission meetings and that any such statements addressed only the private matter of her job performance and not any matter of public concern. CT Page 10823
 I BACKGROUND
The following facts are undisputed. The Housatonic Valley Tourism District was formed by statute to promote the development of the districts as regional leisure and business destinations to stimulate economic growth. The Commission is a public agency that represents the towns of the Housatonic Valley region. Each member town supplies board members to the Commission.
The Commission employs an executive director to assist with the formulation of policies and programs, direct staff and implement general policies established by the Commission. In 1984, the plaintiff was interviewed for the position of executive director. She was provided a written job description which did not contain any language on the terms or duration of the proposed employment. During the interviews, the issue of termination was not discussed, the term of employment was not set and no written employment policies or procedures were provided to the plaintiff. No oral or written promise was provided to the plaintiff altering the at-will status of the position. Following the interviews, the chairman offered the plaintiff the position of executive director with a starting salary of $25,000, benefits, paid holidays and vacation benefits. The plaintiff accepted this offer, but was never given nor did she sign a written contract.
The plaintiff began her employment on June 1, 1984. During the term of her employment, the plaintiff received raises set by the chairman of the Commission and the executive committee. No written policies were created or published by the Commission governing or altering the terms of the plaintiffs employment.
During her employment term, the plaintiff drafted a handbook of policies for an administrative assistant and a fluctuating number of part-time or temporary secretaries under her management. She did not submit this manual to the Commission for approval and the Commission did not approve or adopt its contents.
In September 1995, Riberio, after being elected treasurer of the Commission, undertook a review of the financial records of the Commission. He thereafter produced a "Treasurer's Report," dated December 1, 1995, which listed twenty-nine concerns relating to the finances and bookkeeping procedures of the Commission. Pinter, the chairman of the Commission, although indicating that these points were not necessarily accurate or reflective of the operations of the CT Page 10824 Commission, arranged for a special meeting to discuss the concerns raised in the report. He requested that the plaintiff wait until the meeting to discuss the matter with the Commission and she not "try this in the press" prior to the meeting. He assured her that she would have an opportunity to respond to each of the treasurer's concerns at the upcoming meeting.
At the December 15, 1995 meeting of the Commission, Riberio discussed his concerns, the plaintiff responded to each concern, and the Commissioners asked the plaintiff and Riberio questions and stated their individual feelings and positions. At Mattone's suggestion, the Commission considered requesting its auditors do a forensic audit of the Commission. The Commission voted and passed a resolution concluding that there was no material impropriety concerning twelve of the treasurer's concerns, ten of the concerns merely required streamlining the Commission's bookkeeping procedures, and seven of the concerns would be tabled for future discussion.
On January 26, 1996, the Commission hired an independent firm to conduct the forensic audit. On May 30, 1996, the auditor's report was released. It suggested several improvements to the Commission's financial and bookkeeping procedures, but did not find specific fault with the plaintiffs practices. Though no improprieties were revealed through the audit, several Commissioners were concerned about the plaintiffs behavior during meetings following the receipt of the twenty-nine concerns raised by Riberio. The plaintiff and Riberio had frequent disagreements, which led to a June 14, 1996 meeting to discuss the personal issues between the plaintiff and the Commissioners. The Commission met with the plaintiff and concluded that the plaintiffs contentiousness and resistance to cooperate with the Commission impeded its goals and mission. The plaintiff was offered six months of severance pay and benefits if she resigned. The Commission informed the plaintiff that if she refused the benefits package, her employment would be terminated. The plaintiff, after a brief consideration, advised the Commission that they left her no choice, departed the meeting and never returned to work. After the plaintiff left the meeting, the Commission unammously voted to accept her resignation.
After the meeting of June 14, the Commission delivered an agreement to the plaintiff confirming her resignation and providing a severance package. The plaintiff did not sign this document. The plaintiff was paid for all time worked through June 14, 1996.
On June 17, 1996, the plaintiff wrote to the Commission purporting to retract her resignation. The Commission's attorney responded to the plaintiff by letter that they would not accept the retraction and would not grant the plaintiff a leave of absence. CT Page 10825
Although the plaintiff had refused to sign the acknowledgment of her resignation and accept the Commission's offer of a severance package, the Commission continued to provide her medical benefits for six months after her resignation. The plaintiff also received $300 per week under the Commission's disability policy for two years following her resignation. The plaintiff made no attempt to return to work at the Commission after her resignation on June 14, 1996.
On December 12, 2000, the Commission, Pinter and Mattone filed a motion for summary judgment on counts one through seven, count nine, and counts twelve through fourteen on the ground that no genuine issues of material fact exist and thus they are entitled to judgment as a matter of law. On December 20, 2000, Landwehr filed a renewed motion for summary judgment as to counts ten and fifteen. On January 31, 2001, the plaintiff filed a memorandum of law in opposition to the defendants' motions for summary judgment. Thereafter, the defendants filed reply briefs to the plaintiffs opposition memorandum.
 II SUMMARY JUDGMENT STANDARD
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Brackets omitted; citations omitted.) Appleton v. Board of Education, 254 Conn. 205,209, 757 A.2d 1059 (2000). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Beers v.Bayliner Marine Corp., 236 Conn. 769, 771 n. 4, 675 A.2d 829 (1996). "The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." 2830 Whitney Avenue Corp. v.Heritage Canal Development Associates, Inc., 33 Conn. App. 563, 567,636 A.2d 1377 (1994). "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." CT Page 10826 (Internal quotation marks omitted.) Id., 569.
 III DISCUSSION A COUNTS ONE THROUGH FOUR — WRONGFUL DISCHARGE
Generally, employment for an indefinite term is terminable at will.Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 14,662 A.2d 89 (1995). Employer-employee relationships not governed by an express contract involve some type of implied contract of employment.Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 532, 733 A.2d 197
(1999). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Brackets omitted; internal quotation marks omitted.) Torosvan v. Boehringer IngelheimPharmaceuticals, Inc., supra, 234 Conn. 14. To prove a cause of action for breach of an implied contract of employment, a plaintiff must show that the employer agreed, either by words or action or conduct, to undertake some form of actual contract commitment to him under which he could not be terminated without just cause." (Brackets omitted; internal quotation marks omitted). Id., 15.
A claim of wrongful discharge requires that the claimant have contract rights beyond at-will employment or that the termination of employment violate an important public policy. Sheets v. Teddy's Frosted Foods,Inc., 179 Conn. 471, 474-80, 427 A.2d 385 (1980). The claimant must demonstrate an actual agreement by the defendant to have an employment contract with her, and such a requirement exists whether the employment contract be express or implied in fact. Burnham v. Karl Gelb, P.C.,50 Conn. App. 385, 388, 717 A.2d 811 (1998), aff'd, 252 Conn. 153,745 A.2d 153 (2000). To survive a motion for summary judgment, the plaintiff must submit evidence that the defendant agreed to some such form of contract commitment. Id. "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." (Citations omitted.) Id.
In the present case, the plaintiff failed to submit such evidence to the court. The plaintiff acknowledges that there were no negotiations about the term of her employment, she did not have a written contract requiring just cause for termination, and she was never told that she CT Page 10827 could only be terminated for cause. The defendants have shown that the oral agreement between the parties only included the starting salary, benefits and a promise of periodic reviews and appropriate raises. The plaintiff thus mistakenly inferred that so long as funding for the organization was available and her performance satisfactory, she would not be terminated. However, despite the plaintiffs belief, the Commission never considered, consented to or approved such an agreement. Her belief, without more, is insufficient to sustain an implied contract claim. Reynolds v. Chrysler First Commercial Corp., 40 Conn. App. 725,732, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996). Furthermore, the plaintiff has not contended that an agreement requiring "just cause" for termination existed between the parties.
The plaintiff has failed to show that a genuine issue of material fact exists as to whether the parties had an express or implied employment contract pursuant to which she could only be discharged for just cause. She failed to produce any evidence of a "clear and definite promise" that her employment would be terminated only for cause. Such a promise would also be a fundamental requirement of promissory estoppel, one without which the plaintiff cannot proceed in such a claim. D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, 202 Conn. 206, 213-15,520 A.2d 217 (1987). Therefore, the motion for summary judgment as to count one is granted.
In count two, the plaintiff alleges that she had a "right to continued employment" based on the "Defendant's policies, written guidance, practices, and oral promises. . . ." However, the plaintiff has failed to provide evidence of a contract based on policies, practices and oral promises. No proof was submitted to demonstrate that any of the Commissioners ever made any oral promises that she would be terminated only for cause. The employee handbook drafted by the plaintiff, by its own terms, was not applicable to her position, but rather only to employees who reported to her. The handbook was neither approved nor adopted by the Commission. It was created by the plaintiff after she began working for the Commission. The plaintiff has not submitted a scintilla of evidence indicating a discussion, agreement, or meeting of the minds that the terms and conditions of the plaintiffs employment would be altered or changed by the language of the handbook. No consideration was given for any claimed change to the at-will status of the plaintiff, and the evidence establishes that there was no agreement by either of the parties to follow the terms of the handbook. Thus, the court finds that the plaintiff has failed to present any evidence to sustain her claims of wrongful discharge based on the charges alleged in count two and the defendants are entitled to judgment as a matter of law. CT Page 10828
Count three alleges that the offer of employment to the plaintiff in 1984 implicitly included an agreement to deal fairly with the plaintiff. The plaintiff argues that based on this implicit agreement, her employment would only be terminated for "just cause." The plaintiff claims that she had a "reasonable understanding based on . . . the Commission's actions upon hiring the plaintiff (e.g., setting dates at which her salary would be increased and performing on that commitment and designating her to set up long term benefits plans for herself and future employees), that her services would be retained so long as her job performance was adequate and the Legislature kept the Commission in operation." (Plaintiff's Brief in Opposition to Summary Judgment, p. 12.) The court disagrees with this argument. By her own admission, there had been no negotiations regarding the term of her employment and no promise or offer that her employment would only be terminated for cause. "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." (Citations omitted.) Burnham v. Karl Gelb, P.C., supra,50 Conn. App. 389.
Any claim of breach of an implied covenant of good faith and fair dealing in the count three must fail because of the absence of a contractual agreement requiring just cause for termination of the at-will relationship. Magnan v. Anaconda Industries, Inc., 193 Conn. 558,569-72, 479 A.2d 781 (1984). "Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right." Id., 572.
1. Public Policy Exception
An at-will employee can recover for a wrongful discharge "if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original; internal quotation marks omitted.) Carbonev. Atlantic Richfield Co., 204 Conn. 460, 466-67, 528 A.2d 1137 (1987). The Plaintiff must show that she is "otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Emphasis in original.) Burnham v. Karl Gelb, P.C., 252 Conn. 153, 159-60, 745 A.2d 178 (2000). In the present case, the plaintiff has presented no important public policy that was violated by her termination. Furthermore, she has additional counts in her complaint to redress her claimed wrongs. The claim for unpaid wages, under General Statutes § 31-71 et seq., is addressed in count five. She has an available and applicable statutory remedy for any lost wage claims and therefore cannot make the same claim under a charge of wrongful discharge. CT Page 10829
The plaintiff argues that there is a dispute over whether her last day of work was June 14, 1996. Yet the plaintiff acknowledged, at her deposition, that she was paid for all the time worked though her June 14, 1996 resignation. She also testified that she continued to receive medical benefits for six months after her resignation and $300 per week under the Commission's disability insurance policy for two years following her resignation. Nothing offered by the plaintiff indicates a violation of an important public policy.
The Commission submitted proof establishing that the plaintiff was offered the position of executive director with a starting salary of $25,000 with benefits, holidays and vacation benefits of one week after six months and two weeks after the first year, and that the plaintiff accepted this offer without negotiations. The plaintiff began her employment on June 1, 1984 and was granted periodic salary raises as set by the Commission. The Commission never created or published written policies and procedures governing or altering the terms of the plaintiffs employment. The plaintiff has produced nothing, as would be required to defeat a motion for summary judgment, to show that there are specific facts which contradict those stated in the movant's affidavits and documents. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573,578-79, 573 A.2d 699 (1990). The plaintiffs only challenge is to whether she resigned or was discharged. In either case, the question is whether there was an agreement to pay any benefit after such event, and if so what and how much. The plaintiff has not produced any evidence to show an agreement to pay or provide her benefits, other than, or in addition to, those which she received.
The Commission argues, and the court agrees, that the evidence offered by the plaintiff provides no support for a violation of a social policy that would be left unvindicated. The plaintiff concedes that she was paid for all her time worked through June 14, 1996. Whether that was the day of her resignation or termination would make no difference in light of her at-will status and the absence of any violation of public policy by this occurrence.
2. Promissory Estoppel
The plaintiff also claims that, should it be determined that there was no agreement between the parties, that the plaintiff is entitled to recover on a promissory estoppel theory. She claims that she believed she would not be fired unless her performance was inadequate, that she relied on the benefits that came with stability of such a relationship and therefore did not pursue other opportunities.
To prevail on a cause of action for promissory estoppel, a plaintiff CT Page 10830 must plead and prove the following: (1) the promisor made a clear and definite promise; (2) the promisee reasonably relied on the promise; (3) the promise induced the action taken by the promisee; and (4) injustice can be avoided only by enforcement of the promise. D'Ulisse-Cupo v. Boardof Directors of Notre Dame High School, supra, 202 Conn. 213-15. The defendants in the present case have shown that there is no evidence of a "clear and definite promise" as to a term for the employment and that there was no agreement that termination would require just cause, and the plaintiff has admitted that such an agreement did not exist. Indefinite representations regarding future employment have been held not sufficient to support a cause of action for promissory estoppel. Id., 208. InD'Ulisse-Cupo, an employer's statements that "everything looked fine for the next year," a notice on the school bulletin board stating that "all present faculty members would be offered contracts for next year," and a statement by the employer to the employee that she would have a contract for the following year, were found, by the Supreme Court, not sufficiently promissory nor sufficiently definite to support a claim for promissory estoppel. Id., 208-15. These statements were determined to be "no more than representations indicating that the defendants intended to enter into another employment contract with the plaintiff at some time in the future." Id., 214. The comments as alleged by the plaintiff, assuming them to be true, are far less definite than those in D'Ulisse-Cupo. The plaintiff has failed to show a genuine issue of material fact on the first element of promissory estoppel, i.e., a clear and definite promise.
Furthermore, the plaintiff failed to show that there is a genuine issue of material fact as to the second element, i.e., reasonable reliance on the promise. The plaintiff is required to show that, without a specific and clear agreement on the issue, she was reasonable in relying on her belief that she would continue to be employed for so long as her performance was satisfactory. "[A] promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." Id., 213. As indicated above, the plaintiff has failed to show any evidence of a clear and definite promise of continued employment or of a "just cause" requirement for termination. Furthermore, the plaintiff admitted that she did not act or forbear from action in reliance on any promise or statement by the commission and that, during her employment, she applied for, interviewed for, and entertained other job opportunities. Absent any evidence of a promise, and based solely on the plaintiffs assumptions without foundation, the plaintiff has failed to show that reliance by her, if any, on anything said by the plaintiff was reasonable. Moreover, the plaintiff failed to allege, and the undisputed facts do not support, a claim that "injustice can only be avoided through enforcement" of the alleged promise. As a matter of law, the plaintiff cannot succeed on the theory of promissory estoppel. CT Page 10831
3. General Statutes § 31-51q
Count four alleges that the termination of the plaintiffs employment violated General Statutes § 31-51q. The Commission claims that this count must fail because there are no issues of material fact as to whether she engaged in protected speech and whether adverse employment action was taken against her as a result. To recover under this section, the plaintiff must show that she engaged in speech protected by theFirst
Amendment to the United States Constitution or an equivalent section of the Connecticut Constitution, she was fired because of her exercise of such rights, and her exercise of those rights did not substantially or materially interfere with her working relationship with her employer. Pisciotti v. Bergin, Superior Court, judicial district of Waterbury, Docket No. 114336 (March 12, 1999, Vertefeuille, J.).
The plaintiff neither alleges that she made any constitutionally protected statement nor presents any evidence to show that the Commission prohibited the plaintiff from addressing the Commission's policies and procedures. In fact, the Commission convened its December 15, 1995 meeting to investigate the twenty-nine points which Riberio had raised about the Commission's operations, and the Commission permitted, if not encouraged, the plaintiff to address the issues raised by Riberio. The plaintiffs principal complaint appears to relate to a request by the defendant Chairman Pinter that she not "try" Riberio's issues in the press but rather address them at the Commission's meetings. Such a charge is not sufficient to satisfy the requirements for a claim of termination in violation of General Statutes § 31-51q.
The plaintiff also fails to offer anything to demonstrate that any statements made by her were such as would be considered a matter of public concern. "As a statutory matter, a statute that protects constitutional rights in the workplace should not be construed so as to transform every dispute about working conditions into a constitutional question. . . . The statute applies only to expressions regarding public concerns that are motivated by an employee's desire to speak out as a citizen." (Internal quotation marks omitted.) Cotto v. UnitedTechnologies Corp., 251 Conn. 1, 17, 738 A.2d 623 (1999).
The test as to whether a matter is one of public concern is whether "the content, form and context of a given statement, as revealed by the whole record, constitute speech on a matter of public concern." (Internal quotation marks omitted.) Giacalone v. Abrams, 850 F.2d 79, 86 (2nd Cir. 1988). The Supreme Court has stated that "[s]ection 31-51q applies to constitutionally protected speech, that is to say, speech that addresses a matter of public concern. We conclude herein that whether the subject CT Page 10832 matter addressed by a particular statement is of public concern involves a question of law for the court. We further conclude herein that whether a particular statement addresses such a matter depends on its content, its form, and the context in which it is made." Daley v. Aetna Life Casualty Co., 249 Conn. 766, 777, 734 A.2d 112 (1999).
Where an employee's speech relates solely to a purely private dispute relating to employment, such speech is not protected. Wolf v. ServcoOil, Inc., Superior Court, judicial district of Danbury, Docket No. 327651 (Jan. 16, 1998, Leheny, J.); Jeffress v. Yale University, Superior Court, judicial district of New Haven at New Haven, Docket No. 386866 (Aug. 28, 1997, Silbert, J.). At the December 15, 1995 meeting, the plaintiffs desire to respond to Ribeiro's concerns was fully accommodated. Her presentation related to her defense of her job performance and not to any greater public purpose. Her remarks were to promote her private interests and no showing has been made that she was prevented or limited from speaking. Nothing has been presented, by way of affidavit, deposition testimony, or otherwise, indicating that she was terminated for constitutionally protected speech. In fact, the plaintiff concedes, in her submission in opposition to summary judgment, that she sought the opportunity to defend herself against the accusations and was provided the chance and forum as requested. Moreover, nothing was offered by the plaintiff to indicate that her termination was related to her remarks at the Commission meeting of December 15, 1995. As a matter of law, the plaintiff cannot succeed on her claim under § 31-51q and, therefore, the Commission's motion for summary judgment as to count four is granted.
 B FIFTH COUNT — WRONGFUL WITHHOLDING OF WAGES
Count five contains claims that the Commission wrongfully withheld payment of wages in violation of General Statutes § 31-71 et seq.
The defendants provide references to deposition testimony of the plaintiff that she was paid all wages earned for her time worked at the Commission through to the last day of work; the Commission continued her medical insurance benefits for nine months after her employment was terminated; the Commission continued to provide disability benefits for the plaintiff for two years after her termination; and her only claim is one for unused vacation time. The plaintiff further testified that the Commission had not promised to pay her for unused vacation time; the Commission did not author or approve the handbook policy concerning vacation benefits; the Commission had never adopted a policy to pay terminated employees for unused vacation time or ever paid for the same. CT Page 10833
Neither plaintiffs affidavit nor the pages of her deposition submitted, with the memorandum in opposition to summary judgment, contradict or dispute the facts as presented by the Commission. Nothing is presented to demonstrate the existence of any agreement or promise to pay her for unused vacation time or sick time or to pay for the nine month period during which she was paid medical benefits after her employment ended on June 16, 1996. Therefore, as a matter of law, the plaintiff cannot prevail on these claims and summary judgment shall enter for the Commission in count five.
 C COUNTS SIX, SEVEN AND NINE — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
In counts six, seven and nine, the plaintiff alleges causes of action for intentional infliction of emotional distress against the Commission, Pinter and Mattone. Four elements are required to prevail on such a claim: (1) the defendant must intend to inflict the emotional distress or know or should have known that emotional distress was a likely result of the conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiffs distress; and (4) the plaintiffs emotional distress was severe. Petyan v. Ellis, 200 Conn. 243,253, 510 A.2d 1337 (1986). This cause of action is intended for conduct which exceeds "all bounds usually tolerated by decent society," and which is of a nature especially calculated to cause emotional distress of a very serious kind. DeLaurentis v. New Haven, 220 Conn. 225, 267,597 A.2d 807 (1991). The determination of whether the conduct is actionable is, in the first instance, a question for the court, and only when reasonable minds can differ is the question one for the jury. Reedv. Signode Corp., 652 F. Sup. 129, 137 (D.Conn. 1986); Esposito v.Connecticut College, Superior Court, judicial district of New London at Norwich Complex Litigation Docket, Docket No. 117504 (Sept. 1, 2000,Koletsky, J.).
The court finds that the defendants' conduct did not rise to the extreme and outrageous level required for an action for intentional infliction of emotional distress. The plaintiff has acknowledged, in the deposition segments provided by the defendants, that she was permitted the opportunity to address the questions raised about her management of the Commission's finances, that the Commission's efforts were to support her following the receipt of the reports on the Commission's bookkeeping practices, and that she was pleased with the Commission's investigation and resolution of the twenty-nine points. None of the evidence submitted by the plaintiff indicates that the Commission, Pinter or Mattone's CT Page 10834 behavior, as it related to the cessation of her employment, was extreme or outrageous. Performance issues were discussed in executive session, and the plaintiff was offered six months severance pay and benefits if she resigned her position and was given an opportunity to reflect on her options.
Furthermore, as to Pinter and Mattone, they supported the plaintiff with regard to the twenty-nine points. Pinter criticized Riberio for distributing the twenty-nine point document without first sharing it with the Commission and he questioned the validity of the criticisms raised. Pinter arranged a special meeting to discuss the issues raised by the Riberio questions and provided the plaintiff and opportunity to address the Commission. Mattone acknowledged that the plaintiff should be vindicated and opined that she had done nothing wrong.
The plaintiff has provided nothing to indicate behavior in the nature of intentional infliction of emotional distress, and the defendants have demonstrated that no genuine issue of material fact exists as to her claim of intentional infliction of mental distress. For these reasons, the court grants the defendants' motion for summary judgment as to counts six, seven and nine.
 D COUNT TEN — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (LANDWEHR)
In count ten, the plaintiff alleges a cause of action for intentional infliction of emotional distress directed against Landwehr. The requisite four elements required for such an action are detailed, supra, as related to the same claim against the Commission, Pinter and Mattone.
The plaintiffs allegations as to Landwehr are the same as those against Pinter and Mattone, and for the same reasons, Landwehr's motion for summary judgment is granted. The plaintiff has not submitted anything indicative of the extreme and outrageous conduct required for an action for intentional infliction of emotional distress against Landwehr. For these reasons, the court grants Landwehr's motion for summary judgment as to count ten.
 E COUNTS TWELVE THROUGH FIFTEEN — DEFAMATION
In counts twelve, thirteen, fourteen and fifteen, the plaintiff alleges CT Page 10835 that the Commission, Pinter, Mattone and Landwehr defamed the plaintiff by publishing in the minutes of the Commission the remarks and positions that Riberio set forth in his twenty-nine points concerning the Commission's finances and procedures.
To be held responsible in an action for libel, there "must be an unprivileged publication of a false and defamatory statement." Strada v.Connecticut Newspapers, Inc., 193 Conn. 313, 316, 477 A.2d 1005 (1984). The defendants have provided, in support of their request for summary judgment, deposition testimony of the plaintiff, with exhibits, to show the following: (1) the statements at the December 15 meeting were those made by Riberio; (2) the minutes indicate no action by the Commission to adopt or approve Riberio's statements; (3) the Commission did not agree with most of Riberio's concern as to the plaintiffs management of the financial affairs; and (4) the Commission sought an independent audit on the few points about which it had questions. The plaintiff testified, at her deposition, that she favored the audit to confirm that her actions had been appropriate.
The plaintiff claims that the Commission's inclusions of Riberio's remarks in the minutes of the meeting constitutes a defamation. The plaintiff, however, has failed to provide any authority for this proposition. Moreover, the plaintiff failed to identify any specific defamatory remark made by the moving defendants against whom she has made a claim of defamation or to identify any remark made by either Pinter, Mattone or Landwehr which was false. She has provided nothing which can be attributable to these defendants which could be determined to constitute either a libel or slander. See Silva v. New York LifeInsurance Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 342973, (January 12, 2001, Skolnick, J.).
The defendants also assert that they are entitled to judgment, even had any offending remarks been made by them, because of the fact that they were acting in their roles as Commissioners and were simply considering and discussing a matter related to management of the Commission's affairs. The court agrees. Remarks made by an public official in the discharge of an official duty are at least subject to a qualified privilege. See D. Wright, J. Fitzgerald W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 157(h), pp. 422-26. Therefore, the defendants' motions for summary judgment as to counts twelve through fifteen are granted.
 IV CONCLUSION CT Page 10836
The defendants' motions for summary judgment are granted as to the following counts of the plaintiffs amended revised complaint dated December 5, 1996-one through seven, nine, ten, and twelve through fifteen.
Hiller, J.